Argued May 29; affirmed June 18, 1935.

## MEANY *v.* WIGHT ET AL.

(46 P. (2d) 82)

W. H. *Maguire,* of Portland (Dey, Hampson & Nelson, of Portland, on the brief), for appellants.

*LeRoy Lomax,* of Portland (Lomax & Lomax, of Portland, on the brief), for respondent.

BELT, J.   This is an action to recover damages for personal injuries sustained as a result of a collision between two automobiles.  The accident occurred on Greeley avenue in the city of Portland, at about 1 o'clock in the morning of July 25, 1933.  The Chrysler

roadster in which plaintiff was riding as an invited guest was owned by the defendant Covey's Drive Yourself Service, Inc., and was being driven by the defendant Roland Duffie. There were seven persons in this car—four in the front seat and three in the rumble seat. They were just returning from a party and were proceeding in a southerly direction on Greeley avenue when the accident occurred. The Ford automobile, which was traveling in a northerly direction on this avenue, was owned by the defendant D. W. Wight and was being driven by the defendant Lawrence W. Fields, with the knowledge and consent of the owner. The trial court allowed a motion for a judgment of involuntary nonsuit in favor of the defendant Duffie since in its opinion there was no evidence tending to show gross negligence. A similar motion was allowed as to the defendant Covey's Drive Yourself Service, Inc., on the ground that its status was merely that of a bailor and there was no evidence tending to show that the automobile rented by defendant to Duffie was in a defective or dangerous condition at the time it was rented. Motions for an involuntary nonsuit and a directed verdict in favor of the defendants Wight and Fields were denied, and the cause was submitted to a jury, resulting in a verdict for the plaintiff in the sum of $5,000. The defendants Wight and Fields appeal.

The principal assignment of error is based on the proposition that there is no evidence tending to show negligence on the part of the defendants Wight and Fields in any of the particulars charged in the complaint. The complaint, in substance, charges these defendants with negligence as follows: (1) Failure to maintain a proper lookout for other motor vehicles; (2) failure to have the Ford automobile under proper control in that (a) brakes were not applied and speed

reduced immediately prior to the collision, and (b) driver did not turn to the right in order to prevent collision; (3) driving at a dangerous and excessive rate of speed; (4) driving on the wrong side of the highway. It is fundamental that if there is any evidence tending to support any of the above specifications of negligence there was no error in the denial of the motions for nonsuit and directed verdict. The main contention of the appellants is that the evidence establishes without contradiction that the Ford automobile at the time of the collision was being driven to the right of the center of the highway in a careful and prudent manner. We turn to the record to determine whether such contention can be sustained.

██ Dorothy Meany, the plaintiff, testified that she first saw the Ford, at a distance of about 40 or 50 feet, as the Chrysler came around a slight curve; that the Chrysler and Ford were "well out to the middle of the street" but that the Chrysler "was not over on the wrong side", and that "the Ford was coming right toward us". She further testified that as the Ford and the Chrysler were "coming straight toward each other" Duffie "put on the emergency brake and then turned toward the right of the road". At this juncture, it may be stated that there is ample evidence tending to show that the Ford struck the Chrysler roadster on its left side near the rumble seat. If the testimony of the plaintiff is true—and in the consideration of these motions it must be accepted as true—the Ford at the time of the collision must have been on the left of the center of the highway.

Carl C. Dahlgren, a taxicab driver, who had followed the Chrysler immediately prior to the accident and who observed the position of the cars immediately after the collision, testified that the left headlight of

the Ford was not burning and that the right headlight was ''very close to the center of the street''. He further testified that, as he drove past the Ford, ''it just gave me sufficient amount of room to go by and not come in contact with it''. It is conceded that the width of the pavement is 27 feet. Hence, if this testimony is true, the Ford must necessarily have been on the left of the center of the highway, as the evidence establishes without dispute that the Ford had not been moved after the collision.

C. V. Goodwin testified that, on the night of the accident, he was driving his taxicab in a northerly direction on Greeley avenue; that he was from 40 to 60 feet south of the Ford at the time of the collision; and that when he saw a collision was imminent he brought his car to a stop. Consider the following part of the record relative to this witness's testimony:

''Q. And what were their relative positions just before you stopped, when you first saw them? A. Well, the Chrysler was coming down here, and he had swung over pretty well into the center of the road, and probably got a little past the center, and he was pulling back into the left line of traffic.

''Q. Into your left line of traffic? A. No, I beg your pardon, into his right lane of traffic, —and the Ford coming up the hill, as near as I could see, made no effort to give out for him, and give him room to go back, which there was ample room for him to do.

\* \* \* \* \*

''Q. And where was the left side of the Ford that was coming up meeting the Chrysler, where will you say the left side or wheels of the Ford was with reference to the center of the street? A. It was pretty well in the center of the road, but at the same time he was on, he was in the left lane of traffic, —or the right lane of traffic.

\* \* \* \* \*

"Q. And state whether or not the Ford at any time after you saw them coming together there, whether or not the Ford swerved or turned either direction? A. Not to my knowledge, it didn't.

\* \* \* \* \*

"Q. What was the position of the movement of the Chrysler just before the crash, you say he was trying to get over? A. His car was going to the right side of the road.

\* \* \* \* \*

"Q. Now state whether or not the Ford turned to its right or swerved away from the Chrysler at any time just before this impact? A. Not that I know of, not to my knowledge, and from the way I seen it didn't.

\* \* \* \* \*

"Q. And state whether or not either one of these automobiles, the Chrysler or the Ford slowed down any from the time that you first realized there was going to be a collision until the impact? A. Not to my knowledge they didn't.

\* \* \* \* \*

"Q. Mr. Goodwin, as you described the positions of those two automobiles just at the time of the impact, state whether or not the Chrysler was over far enough to the east, I mean to the west of the highway as to allow ample room for the Ford to pass by on the east side? \* \* \* A. Yes there was ample room for the Ford to go by the Chrysler there at that place."

We agree with appellants that there is much evidence to show that the Ford was not on the wrong side of the road and that it was being driven in a careful and prudent manner, but reference to the same is not deemed necessary. We can only conclude, in the light of the evidence offered on behalf of the plaintiff, that there was a conflict in the testimony relative to such issues of negligence. It follows that there was no error in submitting the cause to the jury.

■ The remaining assignment of error pertains to the failure of the court to give the following instruction requested by the defendants:

"I instruct you that the plaintiff has submitted no evidence against the defendants Wight and Fields as to the following (1) failure on the part of defendants Wight and Fields to maintain a proper lookout; (2) that there is no evidence that the automobile was traveling at a rate of speed in excess of 30 miles an hour; (3) that there is no evidence that the automobile was traveling at an unreasonable rate of speed; (4) that there was no evidence that it was traveling at such a rate of speed as to render it impossible or difficult to properly control the same; (5) that there is no evidence that the defendants failed to apply their brakes; (6) that there is no evidence that the speed of the automobile in which they were riding was not lessened or decreased."

In view of the evidence to which attention has been directed, we think the giving of the above instruction in its entirety would have been an invasion of the province of the jury. No exceptions were taken to any of the instructions which the court gave clearly defining the issues and the law applicable thereto. Of the twelve typewritten pages of instructions requested by counsel for defendants, failure to give the one above mentioned is the only error relative to instructions of which complaint is made.

Finding no error in the record which we think would warrant a reversal, it follows that the judgment of the lower court is affirmed.

BAILEY, J., not sitting.