Argued October 13; affirmed December 7, 1943; rehearing denied
February 1, 1944

# FISH *v.* SOUTHERN PACIFIC CO.

## (143 P. (2d) 917, 145 P. (2d) 991)

Before BELT, Acting Chief Justice, and ROSSMAN, LUSK, BRAND and HAY, Associate Justices.

*Clarence J. Young,* of Portland (Alfred A. Hampson and John Gordon Gearin, both of Portland, on the brief), for appellant.

*Walter S. Lamkin* and *Wallace P. Carson,* both of Salem (Ronald C. Glover and Carson & Carson, all of Salem, on the brief), for respondent.

HAY, J. This action arose out of a collision between a railroad train and an automobile. The collision took place at a grade crossing on Mill Street in the city of Salem, in broad daylight and clear weather, at about ten o'clock a. m., on July 19, 1940. Mill Street runs east and west, and, at the intersection, the defendant railroad company's main track runs a little to the east of due south, crossing the street at an oblique angle. East of the main track and parallel thereto, there is a switch track. From the east, the street approaches the crossing on a rising grade. The plaintiff and respondent, a man fifty-nine years of age, drove his LaSalle automobile west on Mill Street toward the crossing. As he approached, his view of the area north of Mill Street and east of the railroad tracks was obstructed by buildings, trees and shrubbery. The buildings included some tool houses belonging to defendant railroad company, which stood parallel to and immediately east of the switch track. He was driving between twelve and fifteen miles an hour. He was familiar with the intersection, at least to the extent that he had traversed it several times. A string of box cars was standing on the switch track, the nearest box car being only about two feet north of the north line of Mill Street. These box cars effectively blocked plaintiff's view of the main track. One of defendant's passenger trains was approaching the cross-

ing from the north, at a speed of from twelve to fifteen miles an hour. The locomotive was drifting or gliding, using very little steam, and running about as quietly as a train can run. Plaintiff proceeded over the crossing, and the locomotive collided with the rear end of his car. As a result of the collision he suffered physical injuries, to recover damages for which he brought this action against the railroad company and the conductor in charge of the train.

The complaint alleged that the box cars upon the defendant company's switch track, and an eastward curve of the main track immediately north of Mill Street, greatly limited visibility and made the crossing an "unusual hazard". It charged the defendants with negligence (1) in failing to maintain any signalling device to warn plaintiff of the approach of the train; (2) in failing to have a watchman at the crossing; (3) in running its train into the crossing so that the locomotive collided with plaintiff's automobile, without giving any signal or warning by whistle, or bell, or otherwise; and (4) with having violated the "last clear chance" rule. Defendants denied the charges of negligence, and likewise denied the allegations of "unusual hazard". Affirmatively, they pleaded that the plaintiff was guilty of contributory negligence (1) in failing to stop, look or listen; (2) in failing to have his automobile under proper control; (3) in failing to heed the timely and audible signal by bell on defendant company's locomotive; (4) in failing to yield the right of way to defendant company's locomotive; and (5) in opening the right-hand door of his automobile and falling through the doorway. The new matter was denied by plaintiff's reply.

When the taking of testimony had been concluded, the defendants moved for a directed verdict, which was denied. The jury in due course returned a verdict in favor of the plaintiff, and against the defendant Southern Pacific Company alone, in the sum of $5667.80. The company moved for judgment notwithstanding the verdict, but this was denied, and final judgment was entered. Southern Pacific Company appealed.

■■ Error is assigned upon the court's rulings on the motions for directed verdict and for judgment notwithstanding the verdict. In considering the propriety of these rulings, the motions must be regarded as having admitted the truth of plaintiff's evidence, and of every inference of fact that may be drawn from the evidence. The evidence itself must be interpreted in the light most favorable to plaintiff. *McCall v. Inter Harbor Nav. Co.*, 154 Or. 252, 59 P. (2d) 697. Where the evidence conflicts, the court may not infringe upon the function of the jury by seeking to weigh or evaluate it, but is concerned only with the question of whether or not there was substantial evidence to carry the case to the jury and to support the verdict. *Ellenberger v. Fremont Land Co.*, 165 Or. 375, 107 P. (2d) 837; *Allister v. Knaupp*, 168 Or. 630, 126 P. (2d) 317.

■ The appellant takes the position that there was no proof of the allegation that the crossing was unusually hazardous, and, hence, that it was not shown that the appellant was under duty to maintain at the crossing any mechanical signal, warning device or watchman. The fact that plaintiff's view to the right of the intersection was solidly obstructed as he approached the crossing would not, in itself, make the crossing an unusual hazard. If there had been no box

cars upon the switch track, the plaintiff, at a point twenty-one feet east of the center line of the main track, would have been clear of the trees and buildings, and would have had an unobstructed view north along the main track for 712 feet. There is evidence, however, that, with the box cars on the switch track, from a point twenty feet east of the center of the main track, his view up the track to the north was limited to thirty-two feet. After he had proceeded clear of the overhang of the box cars, his view north along the main track would have been 210 feet.

■ While strenuously denying that any box cars were on the switch track, appellant argues that, if there were, they were "a transient obstruction only". It seems to us, however, that the impermanence of the obstruction may not be insisted upon if in fact it created an unusual hazard at that time and place. The jury might have considered that the situation called for the appellant to provide a watchman at the crossing until the transient obstruction was removed.

■ The case of *Russell v. Oregon R. & N. Co.*, 54 Or. 128, 102 P. 619, involved a railroad crossing accident. The road approached the track on a steep grade, the surroundings were such that a traveler had to be almost upon the track in order to have a clear view of it. Even then the track curved in such a manner as to prevent his seeing very far. The court held that, unless the evidence shows the crossing to be particularly dangerous, there is no duty on the part of the railroad company to maintain signal lights, gates or a watchman for the protection of the traveling public. It held further, however, that the conditions were such that it was not error to submit to the jury the question of whether or not the defendant was negligent in failing to maintain a watch-

man, or gates or bars. It did not hold that, in all cases, the question of the necessity of providing lights, gates or a watchman should be submitted to the jury, but only that, in that particular case, and in any others "where the undisputed testimony shows extraordinary dangers", submission of the question to the jury is not error. We do not understand, however, that the court meant that the question should be submitted to the jury only when the evidence of extraordinarily hazardous conditions is undisputed, but rather that its comment in that regard was confined to the facts of that case and to those of other cases presenting similar factual situations. The presence or absence of conditions constituting unusual or extraordinary hazard is a question of fact, and, if there is substantial evidence tending to prove the issue involving such question, upon which the jury could lawfully find a verdict for the plaintiff, withdrawal of the question from the jury would be reversible error. 3 Am. Jur., Appeal and Error, section 1135, note 11.

*Meaney v. Portland Electric P. Co.*, 131 Or. 140, 282 P. 113, was another railroad crossing accident case. The accident occurred at Courtney Station in Clackamas County. There, as in this case, there was a sidetrack parallel to and a few feet distant from the main track. Immediately north of the station, the railroad intersected at right angles and crossed at grade a road which was much used by automobiles and other traffic. The accident happened on a dark and cloudy night, and the driver of the automobile was familiar with the crossing. The highway had a slight grade downward toward the railroad. From a point 200 feet east of the crossing one could, in the daytime, see the main track for two or three blocks to the north and for 200 feet to

the south. The court held that the trial court should not have submitted to the jury "generally" the question of the alleged negligence of the defendant railroad in failing to maintain lights, gates or a watchman at the crossing, in the absence of evidence that it was extraordinarily dangerous.

The points of distinction between the Meaney case and the case at bar are apparent. In the former, the automobile collided with the side of the train, the accident occurred at a country grade crossing, and, having approached the crossing on a down grade, the driver had a clear view of the main track at the crossing and for 200 feet in one direction and "two or three blocks" in the other. In this case, the collision took place at a grade crossing in a city, the plaintiff approached the crossing on a slight up-grade, and his view of the main track was entirely obstructed toward the north by buildings, trees and a string of box cars.

■ In *Irwin v. Southern Pacific Co.*, 163 Or. 72, 95 P. (2d) 62, the plaintiff, in the evening, when the weather was cloudy and the visibility poor, drove his automobile into the side of a logging train which was standing on a railroad crossing where the railroad track and the highway intersected at nearly right angles. Warning signs at the crossing were maintained both by the railroad and by the State Highway Commission. The court held that there was no evidence that the crossing was extrahazardous. The plaintiff drove his car into an obstruction which was in plain view. The general rule appears to be that, except where the facts show that the situation is unusually hazardous, the occupation of a crossing by a train is, in itself, sufficient and adequate warning of its presence. *Meaney v. Portland Electric P. Co.*, supra; *Christensen v. Willamette V. Ry. Co.*,

139 Or. 666, 11 P. (2d) 1060; *Schofield v. Northern Pac. Ry. Co.*, 4 Wash. (2d) 512, 104 P. (2d) 324.

■ The fact that the collision occurred is not in itself proof of negligence. *Oberstock v. United Rys. Co.*, 68 Or. 197, 137 P. 195; *Wilbur v. Home Lbr. & Coal Co.*, 131 Or. 180, 282 P. 236; 52 C. J., Railroads, section 1975; 22 R. C. L., Railroads, p. 1051.

■ No duty or obligation rested upon the appellant to give warning in any particular manner of the approach of its train; its duty was fulfilled if it gave such warning by blowing a whistle, by ringing a bell, or by any other reasonably adequate means. *Morenci Southern Ry. Co. v. Monsour*, 21 Ariz. 148, 185 P. 938; 52 C. J., Railroads, section 1814, p. 219; 22 R. C. L., Railroads, section 225, p. 997. The complaint against the defendants, however, was not that they gave an inadequate warning of the approach of the train, but that they gave no warning whatever.

In this connection, the appellant insists that there is an absence of satisfactory evidence of its failure to give warning. The place where the collision occurred is in the heart of the city of Salem. The appellant does not contend that the locomotive's whistle was blown for this particular crossing, although it was blown at a whistle post just north of the city limits, or approximately one mile from the point of collision. There was evidence that it is unusual for locomotive whistles to be blown within the city limits. No doubt, however, the signal by the ringing of a bell attached to the locomotive, if the bell is reasonably audible and the signal is timely given, is sufficient warning of the approach of a train to a crossing, if the train is running at slow speed.

■ The plaintiff himself testified that, while approaching the crossing, he did not hear any train coming or any signal by bell or otherwise. The blowing of the train's whistle at a point approximately a mile away from the crossing could hardly be considered, under the circumstances, an adequate warning of the approach of the train. North of the crossing the track curves and is visible from the main track at the crossing for a distance of only approximately 800 feet. A blast of a whistle in open country, where the railroad track runs in long tangents, might be adequate warning of the approach of the train to a grade crossing, but in the present case the intervening area between the crossing and the place where the locomotive's whistle was blown is a part of the city of Salem, and the crossing itself was within the appellant's switching yard and within about half a city block of its Salem station. The appellant cites *Andersen v. Southern Pacific Co.*, 165 Or. 368, 106 P. (2d) 1048. In that case, the plaintiff and three other persons were riding in a Model T Ford car toward a railroad crossing in the city of Eugene. They stopped twenty-six feet from the crossing, and all of them looked and listened but none saw or heard an approaching train. At the place where they stopped, looked and listened, their view of the track was partially obstructed by a tree, but they could see down the track for a distance of 156 feet. When clear of the tree and before they reached the track, they had an unobstructed view for "a considerable distance" in the direction from which the train was approaching, but none of them either looked or listened after passing the tree. Under those circumstances, the trial court granted a motion for involuntary nonsuit, which this court sustained.

■ In the case at bar, the plaintiff testified that he was listening all the time as he approached the point of collision, that his hearing was good, and that he heard neither the train nor any bell or other signal. It is to be remembered that his view was almost completely obstructed until he was actually upon the appellant's tracks. These facts distinguish the present case from the Andersen case. The witness Williams, who at the time of the accident was standing on the sidewalk on the south side of Mill Street, a short distance west of the railroad track, and who saw the whole of the accident, testified that he observed both the train and automobile approaching the crossing, and that he heard neither whistle nor bell. His hearing, he said, was "all right". The appellant's witnesses testified positively that the bell was ringing continuously from a point at least before the train rounded the curve and could be seen from the crossing, until it came to a stop after the collision. There was substantial evidence to the contrary, however, and, we think, evidence sufficient to take the case to the jury. *Meany v. Wight,* 150 Or. 470, 472, 46 P. (2d) 82.

■ The evidence of the appellant's engineer and of the fireman was positive, to the effect that the bell was rung, while the evidence of plaintiff and his supporting witness was negative, to the effect that they heard no bell. Appellant contends that the positive evidence must prevail, under the rule that, other things being equal, positive evidence is stronger than negative. Under the circumstances, however, we must consider the evidence of the plaintiff, at least, although couched in negative form, as being affirmative in fact. His attention was centered upon listening for the very thing which he testified that he did not

hear. His hearing was good, and, judged by the imminence of the collision, the train must have been in the immediate vicinity. By the weight of authority, his testimony must be taken as a positive assertion that the bell of the locomotive was not rung. 20 Am. Jur., Evidence, section 1188; *Staples v. Spence,* (1942) 179 Va. 359, 19 S. E. (2d) 69, 140 A. L. R. 527, and note, 530. Appellent cites *Andersen v. Southern Pacific Co.,* supra, as supporting the contrary view. In the statement of facts in that case, we find the following:

"All plaintiff's witnesses testified that they did not see the train, or hear the ringing of the bell or the sound of the whistle, but no witness testified that the headlight on the train was not burning, or that the whistle was not blown or that the bell was not rung before and at the time the train crossed Jefferson Street."

The court held, in effect, that testimony of the occupants of the automobile, that they did not hear the ringing of the bell or the blowing of the whistle, was not evidence that the bell was not rung, or that the whistle was not blown. The holding, we think, was correct, in view of the fact that the evidence was that none of the occupants of the car either looked or listened. The fact that they failed to listen distinguishes the case from the case at bar.

The principle of the last clear chance was ably defined by Mr. Justice Burnett in *Emmons v. Southern Pacific Co.,* 97 Or. 263, 285, 191 P. 333. In terms of that definition, it would seem that the evidence here was insufficient to charge the defendant with a breach of duty in this respect. Appellant's locomotive collided with plaintiff's automobile so quickly after plaintiff had come from behind the box cars to a point where the

engineer and fireman of the locomotive could have seen him, that one may assume that there could have been no opportunity for the engineer to have stopped the train, even by the dangerous expedient of an emergency stop, in time to have avoided the collision.

The appellant takes the position that plaintiff was guilty of contributory negligence constituting the proximate cause of the accident, in that, upon a consideration of all of the evidence, no reasonable conclusion can be reached other than that he, while still in a place of safety, could have observed the oncoming locomotive in time to have avoided a collision therewith.

■ The plaintiff was fairly familiar with the crossing, and knew that the railroad track was in active use and that trains might be expected to be traveling on it at any time. He did not stop his automobile at the place where the "stop" signs had been erected, but the jury might have considered that his failure to stop at that place was not contributory negligence under the circumstances of the case. Construing the testimony in the light most favorable to plaintiff, we must assume that his view of the track from the direction in which the train was approaching was obstructed, that he proceeded forward, behind the obstructions, at a rate of speed of between twelve and fifteen miles an hour, centering his attention upon his sense of hearing, which was normal, and listening for signals which would indicate the approach of a train. He heard neither bell nor whistle, nor did he hear the train approaching. Bearing in mind that there is substantial evidence that the track was obstructed by box cars placed there by the appellant, we think that the question of whether or not the plaintiff was guilty of contributory negligence in proceeding forward as he did, relying upon his sense of

hearing, and concentrating upon that faculty, was for the jury. The appellant cites *Cathcart v. Oregon-Washington R. & N. Co.,* 86 Or. 250, 168 P. 308. In that case, it appeared that the plaintiff, in the daytime, was driving his automobile truck over a railroad crossing in The Dalles. There were six railroad tracks running parallel to each other at the crossing. On the fourth of these tracks, a work-train, with the bell of its locomotive ringing, stood with its front end approximately on the edge of the roadway on which plaintiff was driving. Plaintiff passed in front of that locomotive with a clearance of about eighteen feet. Upon reaching the fifth track, he was struck by a locomotive which came from "behind" the work-train. He was familiar with the crossing. He testified there was no whistle, bell or other signal given, and that the locomotive which struck him was traveling at twenty-five or thirty miles an hour. This court reversed the judgment in his favor and ordered a judgment of nonsuit to be entered. The appellant contends that the Cathcart case is practically on all fours with the present case as to facts, but it would appear that there are distinguishing features. We quote from the decision, as follows:

"In the present instance there must have been clearance between the two main tracks else the trains could not have passed each other; hence, there was a place, to wit, in this clearance, from which the plaintiff safely could have viewed the track before going upon it. He says he looked, but in what direction does not appear, except that he tried to peer around the corner of the work train. He knew from his own experience that the danger to be apprehended was from rolling stock on the adjacent track. It was his duty to look upon that track from a point where he could see it in both directions. * * *

" * * * There can be no reasonable question but that the plaintiff whose hearing was interfered with in a material degree by the ringing of the bell on the standing locomotive went forward experimentally and collided with the switch-engine. He cannot complain if the experiment turned out disastrously. Warned of danger by his thorough familiarity with the surroundings, he passed the zone of safety without efficiently looking from there upon the only place from which danger would come and went forward into the accident which happened. If he had collided with an innocent pedestrian coming from the direction pursued by the locomotive the footman could easily have established negligence on the part of the present plaintiff. * * * "

In the case at bar, the evidence shows that the railroad track was curved, which added a factor of danger which was not present in the Cathcart case. Moreover, even assuming that between the two tracks involved in the Cathcart case, and also between the two tracks involved in this case, there was a place which could have been described as a place of safety for a person on foot, it must be remembered that the plaintiff in this case was not on foot but was in an automobile. (So, also, was Cathcart, for that matter, but the decision seems to assume that the space between the tracks, in that case, was sufficient to constitute a zone of safety.) In the Cathcart case, plaintiff had had twenty years' experience with the freight yard and the switching operations therein, and, knowing the danger, and with his hearing interfered with by the ringing of the bell upon the standing locomotive, he went forward experimentally and collided with the switch-engine. In the present case, on the contrary, the plaintiff went forward relying upon his hearing, there being no distracting noise to interfere with his hearing of the bell

or other signals of the approaching train, had any been given. The train was drifting in and traveling as noiselessly as a train ever does. The only manner in which the plaintiff could have obtained a clear view of the railroad track, without placing himself in a position of immediate danger, would have been to have stopped his car and gone forward on foot. To do that, he would no doubt have been required to stop the car at the customary place, before entering upon the track at all, and, when he had gone forward and looked around the end of the nearest box car, determined that the track was clear, and returned to his car, it would still have been unsafe for him to proceed. This is so because, after he had experimentally viewed the track, and returned to his car and driven forward, in the interim a train might have approached the crossing from the north, and have come so close thereto as to constitute an immediate hazard. The track is visible for only 210 feet from a point clear of the overhang of the box cars, which would be the point whence a man on foot could view the track. In *Olds v. Hines,* 95 Or. 580, 187 P. 586, 188 P. 716, there were no obstructions whatever between the crossing and a point 500 feet along the track in the direction from which the train was approaching the point of collision. It was held that, while the men in charge of the train could have seen the truck which Olds was driving, as it approached the crossing, it was equally true that the plaintiff could just as easily have seen the train approaching, and, hence, that he was guilty of contributory negligence. In *Slusher v. Great Southern R. R. Co.,* 107 Or. 587, 592, 213 P. 420, the court commented that: ''There are cases wherein a party is not required to look, where his other senses will serve his purpose to the extent that a prudent man

would trust them''. The circumstances there, however, made it imprudent for the plaintiff to depend upon his other senses. For example, he was driving his car in low gear, which made the operation of the engine noisy, and moreover, the wind was blowing so strongly that it prevented the occupants of the car from even hearing each other speak. Those circumstances distinguish the case from the one at bar. In *Morser v. Southern Pacific Co.*, 110 Or. 9, 222 P. 736, the plaintiff was a pedestrian. He knew that the train was approaching the crossing, and he was racing with it in an endeavor to cross over first. The testimony showed that he saw the approaching electric train when it was forty or fifty feet distant, in ample time to have ''retreated the step that would have taken him into safety.'' There is no parallel between that case and the present one.

■ The circumstances here seem to us to be such that reasonable men might draw different conclusions as to whether or not reasonably adequate notice was given of the approach of the appellant's train, and as to whether or not the plaintiff was guilty of contributory negligence in proceeding to cross over the tracks, relying upon his sense of hearing. These questions cannot be determined by this court as a matter of law, and it was not error for the trial court to submit them to the jury. *Kunz v. Oregon Railroad & N. Co.*, 51 Or. 191, 93 P. 141, 94 P. 504; *Devroe v. Portland Ry. L. & P. Co.*, 64 Or. 547, 131 P. 304.

In *Baltimore & Ohio R. Co. v. Goodman*, 275 U. S. 66, 48 S. Ct. 24, 72 L. ed. 167, 56 A. L. R. 645, Mr. Justice Holmes enunciated a doctrine which would have made it almost impossible for a railroad company to have

been held liable under any circumstances in cases of the present sort. He said:

"＊ ＊ ＊ When a man goes upon a railroad track he knows that he goes to a place where he will be killed if a train comes upon him before he is clear of the track. He knows that he must stop for the train, not the train stop for him. In such circumstances it seems to us that if a driver cannot be sure otherwise whether a train is dangerously near he must stop and get out of his vehicle, although obviously he will not often be required to do more than to stop and look. It seems to us that if he relies upon not hearing the train or any signal and takes no further precaution, he does so at his own risk. If at the last moment Goodman found himself in an emergency it was his own fault that he did not reduce his speed earlier or come to a stop. It is true as said in Flannelly v. Delaware & Hudson Co., 225 U. S. 597, 603, that the question of due care very generally is left to the jury. But we are dealing with a standard of conduct, and when the standard is clear it should be laid down once for all by the courts."

Notwithstanding the Goodman decision, the weight of authority continued, as before, to hold that a driver approaching a railroad crossing, at which the view is obstructed, is not required, in the exercise of due care, to go forward on foot to a point where an unobstructed view of the track may be obtained. Anno., 91 A. L. R., p. 1055. The supreme court itself took an early opportunity to characterize Justice Holmes' pronouncement as dictum, in *Pokora v. Wabash R. Co.,* 292 U. S. 98, 78 L. ed. 1149, 54 S. Ct. 580, 91 A. L. R. 1049. The opinion in that case was written by Mr. Justice Cardozo. John Pokora, the plaintiff, while driving his truck across a railroad grade crossing, was struck by a train and injured. The view of the crossing

was obstructed, and the plaintiff, proceeding forward slowly, listened for warning signals which would indicate the approach of a train, and, hearing none, proceeded to cross the track, and the collision resulted. The district court held that Pokora was guilty of contributory negligence, and directed a verdict for the defendant. Judgment was affirmed by the circuit court of appeals, on the authority of the Goodman case, but was reversed on certiorari by the supreme court. In the opinion, Mr. Justice Cardozo observed:

"* * * Here the fact is not disputed that the plaintiff did stop before he started to cross the tracks. If we assume that by reason of the box cars, there was a duty to stop again when the obstructions had been cleared, that duty did not arise unless a stop could be made safely after the point of clearance had been reached. See, e. g., Dobson v. St. Louis S. F. Ry. Co., supra. For reasons already stated, the testimony permits the inference that the truck was in the zone of danger by the time the field of vision was enlarged. No stop would then have helped the plaintiff if he remained seated on his truck, or so the triers of the facts might find. His case was for the jury unless as a matter of law he was subject to a duty to get out of the vehicle before it crossed the switch, walk forward to the front, and then, afoot, survey the scene. We must say whether his failure to do this was negligence so obvious and certain that one conclusion and one only is permissible for rational and candid minds. Grand Trunk Ry. Co. v. Ives, supra.

"Standards of prudent conduct are declared at times by courts, but they are taken over from the facts of life. To get out of a vehicle and reconnoitre is as uncommon precaution; as everyday experience informs us. Besides being uncommon, it is very likely to be futile, and sometimes even dangerous. If the driver leaves his vehicle when he nears a cut or curve, he will learn nothing by getting out about

the perils that lurk beyond. By the time he regains his seat and sets his car in motion, the hidden train may be upon him. See e. g., Torgeson v. Missouri-K.-T. R. Co., 124 Kan. 798, 800, 801; 262 Pac. 564; Dobson v. St. Louis S. F. R. Co., supra; Key v. Carolina & N. W. R. Co., 150 S. C. 29, 35; 147 S. E. 625; Georgia Railroad & Banking Co. v. Stanley, 38 Ga. App. 773, 778; 145 S. E. 530. Often the added safeguard will be dubious though the track happens to be straight, as it seems that this one was, at all events as far as the station, about five blocks to the north. A train traveling at a speed of thirty miles an hour will cover a quarter of a mile in the space of thirty seconds. It may thus emerge out of obscurity as the driver turns his back to regain the waiting car, and may then descend upon him suddenly when his car is on the track. Instead of helping himself by getting out, he might do better to press forward with all his faculties alert. So a train at a neighboring station, apparently at rest and harmless, may be transformed in a few seconds into an instrument of destruction. At times the course of safety may be different. One can figure to oneself a roadbed so level and unbroken that getting out will be a gain. Even then the balance of advantage depends on many circumstances and can be easily disturbed. Where was Pokora to leave his truck after getting out to reconnoitre? If he was to leave it on the switch, there was the possibility that the box cars would be shunted down upon him before he could regain his seat. The defendant did not show whether there was a locomotive at the forward end, or whether the cars were so few that a locomotive could be seen. If he was to leave his vehicle near the curb, there was even stronger reason to believe that the space to be covered in going back and forth would make his observations worthless. One must remember that while the traveler turns his eyes in one direction, a train or a loose engine may be approaching from the other.''

 It seems to us that the facts in the case at bar much more nearly resemble those in the Pokora case than those in the Cathcart case. Each case, of course, must be considered in the light of its own particular facts, and, under the facts in this case, there is no fixed standard of conduct, failure to comply with which would, as a matter of law, prevent the plaintiff from recovery of damages. Conceding that the jury might have found that the obstructed view of the track and other circumstances which we have discussed created a situation of unusual danger, and had the effect of requiring the plaintiff, in the exercise of due care for his own safety, to observe more than ordinary precautions, it is apparent that reasonable men might draw different inferences and arrive at different opinions from the evidence as to whether or not due care had been exercised.

"The close question in the case is whether it can be said, as a matter of law, that the plaintiff was guilty of contributory negligence. It is only in the clearest of cases that a court is warranted in withdrawing this question from the consideration of the jury. If there can be but one reasonable deduction from a given state of facts; if there is no reasonable debate as to the conclusion to be drawn, the court may so declare. Otherwise, it is exclusively within the province of the jury to say whether plaintiff exercised due care to avoid injury. The difficulty lies, not in the statement of the law, but rather in its application. Each case must be read in the light of its own facts, and for such reason it is not helpful to review at length the many cases cited. * * *"

*Krause v. Southern Pacific Co.*, 135 Or. 310, 316, 295 P. 966.

 The appellant argues that, if the plaintiff had "merely stopped for as little as a second or two

before going over the main line crossing the locomotive would have been blocking the crossing in front of him'', and there would have been no collision unless he had blindly driven into the side of the train. It says further that it was unnecessary for plaintiff to get out of his car; that stopping alone would have prevented the accident. These arguments assume, as a fact, that adequate signals of the approach of the train were being given, and that plaintiff, if he had stopped his car, would have heard them, but would not have heard them otherwise. If, however, the signals were not given (which we must assume for the purpose of the present discussion), the arguments fail. In the opinion in the Cathcart case, there appears the following:

> "No case has been produced and we opine none can be which excuses the traveler from both looking and listening as he approaches a crossing; and it is well settled that, especially where he is familiar with the situation he must use greater care as the danger is greater."

This assumes, of course, that there is a safe place from which the traveler can look.

*Burroughs v. Southern Pacific Co.*, 153 Or. 431, 56 P. (2d) 1145, has some points of similarity with the present case. Judgment of nonsuit was entered in favor of the railroad company. The plaintiff's view of the grade crossing at which the accident occurred was obstructed by a building. It was night-time. The plaintiff was an experienced driver, with normal sight and hearing, and he was familiar with the crossing. We quote a portion of his testimony which epitomizes his contention:

> "A. Well, I was going home from the mill and I was driving south on Grand avenue, and I slowed

to 15 or 18 miles an hour, and I looked to my right and there was no object in sight, and no engine, and I listened and there was absolutely no bell and no light on that engine. I did not see anything at all until I looked to my left and by the time I got my eyes onto my car and going, the engine was onto me. No bell whatever.''

The trial court gave judgment of involuntary nonsuit against plaintiff. Although the accident occurred in the night-time in the Burroughs case and in the daytime in this case, and, in the former, in addition to the absence of signal by whistle or bell, the headlight on the locomotive was not burning, the facts are sufficiently similar so that the case is authority for the plaintiff here. Mr. Justice BELT, in writing the opinion, commented on the fact that, in railroad crossing cases, because of contributory negligence of the plaintiffs, this court, as a general rule, has denied recovery. Only in rare cases has the evidence justified the submission of the cause to the jury. Conceding that it was difficult to reconcile *Pokora v. Wabash Ry. Co.,* supra, with *Cathcart v. Oregon-Washington R. & N. Co.,* supra, the court nevertheless reversed the case and remanded it for a new trial. In the case at bar, the jury might have found that plaintiff failed to look to his right before entering upon the main track, but they might further have found that, under the circumstances, looking would not have saved him.

In *Stovall v. Portland Electric P. Co.,* 127 Or. 518, 273 P. 701, this court held that the plaintiff was guilty of contributory negligence as a matter of law, in not looking from a place from whence he could see whether or not a train was approaching, or, if he did look from such a place, in attempting to race the train to the crossing. The court saw no material distinction be-

tween the facts of that case and those of the Goodman case, supra. This is commented upon by counsel for the appellant. It is to be observed, however, that Mr. Justice Cardozo, in the Pokora case, approved the decision of the court in the Goodman case, and disapproved merely of the dictum which was included therein.

■ The appellant insists that the plaintiff was under a duty to look for an approaching train from a place where he could see, and to listen from a place where he could hear. This duty, counsel says, was constant, and increased as he neared the crossing, reaching its climax only as he crossed the main track. It appears, however, that the place from which plaintiff ordinarily might have looked with safety, and with sufficent nearness to the tracks that his looking would have been a safeguard to him in crossing, had been blocked by the appellant's box cars, restricting his view to thirty-two feet of the main track to the north. He observed that there was no locomotive attached to the box cars. Then he looked in both directions. The track was clear to the south. As he went forward, without actually turning his head to the right, he "checked the situation" in that direction by looking in "the general way every motorist watches". Evidently, the approaching train could not be seen, as he had actually crossed the main track before the locomotive struck the rear end of his car. As for his duty to listen from a place where he could hear, it is evident that, if his hearing was normal and if he was listening, he should have heard the locomotive bell tolling as he proceeded across the switch track, if the bell had been tolled.

■ The traveler upon a highway, who is about to pass over a railroad crossing, and the operators of the

railroad train approaching the crossing simultaneously are under the same obligation, each to the other, to exercise reasonable diligence to avoid a collision, with the exception that the train, being upon a fixed track and more difficult to control than an automobile, is considered to have the right of way. *Robison v. Oregon-Washington R. & N. Co.*, 90 Or. 490, 176 P. 594. In that case, as viewed in the light most favorable to the plaintiff, the facts indicated that Robison and the driver of the automobile, who were engaged in a joint enterprise, observed the train approaching at a speed of between twenty-five and thirty miles an hour, when the locomotive was from eighty to one hundred feet distant from the intersection. The automobile was being driven at a speed of between four and six miles an hour, and, when it was within three or four feet of the track, the driver could see along the track for a distance of eighty to one hundred feet. In view of the circumstances this court held that the driver was guilty of contributory negligence as a matter of law. We said that, *if he can do so from a place of safety,* the driver of the automobile must look upon the course of the train from that point, and so take the necessary precautions for his own safety. We conceded, however, that there might be circumstances under which a traveler is not obliged both to look and listen. The opinion says:

> "All the precedents make it incumbent upon the traveler both to look and listen. Neither of them can be eliminated without (sic) its use is practically impossible. The law does not excuse him from exercising both of them, unless there is no reasonable opportunity for that purpose."

We have no intention of detracting from expressions in the opinions in the Cathcart and Robison cases, to

the effect that the mere presence of the railroad track is, in itself, a warning to the traveler who would cross it. We are aware that sympathetic juries may be inclined to favor plaintiffs in cases of this sort, and we appreciate the fact that it is incumbent upon the courts to withdraw from juries all cases in which there is no substantial evidence that the accident was caused by the negligence of the railroad company, or where the evidence shows the plaintiff to have been guilty of contributory negligence as a matter of law. Nevertheless, it is our opinion that the present case was properly submitted to the jury.

In *Morser v. Southern Pacific Co.*, 124 Or. 384, 262 P. 252, the contention of the plaintiff, a pedestrian, that, at a distance of seven feet from the track, he looked and listened for a train, but neither saw nor heard one, was held to be preposterous, in view of the fact that the approaching train carried an electric headlight which was visible for a distance of 180 feet, even through the prevailing fog. The court characterized the situation as "a case of the law of nature taking precedence over the testimony of a witness." We quoted with approval the dictum of Mr. Justice Holmes in the Goodman case, thus betraying a tendency to follow that dictum contrary to the weight of authority in the state courts. There is a sufficient dissimilarity in the facts in that case and those in the present one, however, to emphasize that cases of this sort cannot be determined by laying down a standard of care, but only by applying to the facts the test of the conduct to be expected from the "reasonable man".

The distance between the east rail of appellant's main track and the west rail of the switch track is approximately twelve feet. The box cars had an

overhang of about two feet and the locomotive had an overhang of two feet or more. This would leave a "zone of safety" of less than eight feet, and, as a matter of fact, it was stipulated at the trial that the width of absolute clearance between the two tracks, if the box cars were on the switch track, was only six feet. The plaintiff's car measured nine feet from the front bumper to the driver's seat, or three feet more than the width of the alleged safety zone. Under those circumstances, it should be apparent that the question of plaintiff's contributory negligence was for the jury and not for the court. Even the figures, which demonstrate the inadequacy of the "zone of safety", do not tell the entire story, as allowance should be made for time within which plaintiff, within the "safety zone", might perceive his danger and react to extricate himself therefrom.

"* * * Nice calculations made in the quietude of the office after an accident has occurred may be persuasive in determining whether due care has been exercised, but ordinarily negligence can not thus be established as a matter of law. It is comparatively easy, in the light of subsequent events, to say that an accident could have been avoided if the parties involved had done this or that thing but the law does not apply such a rigid test: * * *".

*Burroughs v. Southern Pacific Co.,* supra. See also *Pokora v. Wabash Ry. Co.,* supra.

■■ In approaching the railroad crossing, the plaintiff had no right to depend solely upon signals from the approaching train, but, on the contrary, even if such signals were absent, he was still under a duty to exercise due care for his own safety. *Robison v. Oregon-Washington R. & N. Co.,* supra; 22 R. C. L., Railroads, section 273, p. 1040. Enough has been said,

however, to indicate that we are of the opinion that this question also was properly left to the jury, under the circumstances.

The defendant O. O. Johnson, the conductor of the train, having been exonerated by the verdict of the jury, the appellant contends that such exoneration had the effect of depriving of any legal basis the verdict which was rendered against it. In this connection, it cites *Feazle v. Industrial Hospital Assn.*, 164 Or. 630, 103 P. (2d) 300; *Emmons v. Southern Pacific Co.*, 97 Or. 263, 191 P. 333; *Doremus v. Root*, 23 Wash. 710, 63 P. 572, 54 A. L. R. 649; 2 Am. Jur., Agency, section 455, p. 361. The rule is that, where a master and servant are joined as defendants in an action to recover damages for a tort committed by the servant, a verdict in favor of the servant exonerates the master where the liability of the master, under the doctrine of respondeat superior, is based solely upon the wrongful act of the servant. The complaint in this case charged the defendants jointly with certain acts of alleged negligence. If the defendant Johnson had been the person who alone performed any of those acts, then a verdict in his favor would have exonerated the appellant, his employer. It appears, however, that Johnson did not personally commit any of the acts charged against him. Hence, a verdict in his favor was no bar to one against his employer, which, being a corporation, may have been guilty of negligence through the act of another agent or employee than Johnson. *Hise v. City of North Bend*, 138 Or. 150, 6 P. (2d) 30; *Curtis v. Puget Sound Bridge & Dredging Co.*, 133 Wash. 323, 233 P. 936; 2 Am. Jur., Agency, section 455, p. 361; *Senske v. Washington Gas & Electric Co.*, 165 Wash. 1, 4 P. (2d) 523.

We find no error in the record, and the judgment is affirmed.

BRAND, J., concurs in the result.

LUSK, J., dissents upon the ground that, under the evidence, the plaintiff was guilty of contributory negligence as a matter of law.

Petition for rehearing denied February 1, 1944

ON PETITION FOR REHEARING
(145 P. (2d) 991)

## HAY, J.

Counsel for appellant railroad company have petitioned for a rehearing in this case, and, in support of their petition, have submitted an able brief, contending that our decision does violence to former decisions of this court.

They assert that we erred in holding that the temporary presence of box cars on the adjoining switch track constituted an unusual hazard, and erred also in holding that the jury might properly have concluded that a crossing watchman should have been provided until the transient obstruction was removed. Commenting upon these features of our decision, they inquire, what unusual hazard did these box cars create? They say that they created no such hazard to travelers approaching the crossing from the west. They argue, moreover, that they created no hazard to a traveler approaching from the east, as was plaintiff, in so far as a train coming from the south was concerned, as the view toward the south was unobstructed. Thus, they say, a watchman would have been unnecessary. As to the "limited obstruction" on the north, they contend, re-

lying upon *Russell v. Oregon R. & N. Co.,* 54 Or. 128, 102 P. 619, that the hazard was not unusual.

In that case, the conditions constituting unusual hazard were: (1) a curved track, (2) a steep grade toward the track, (3) the noise of roaring waters at a nearby dam, (4) the noise of a nearby sawmill, and (5) echoes from the high walls of a canyon through which the railway passed, causing confusion respecting the direction from which the train was approaching. They quote the following from the decision:

> "To require a flagman or automatic signals at every crossing would be to entail upon railroad companies an intolerable burden and expense. To even require such precautions at every crossing where the view of the track is obstructed would be going farther than justice or sound law will permit, * * * * * ".

Counsel refrain from continuing the quotation, which goes on to state:

> "but there are situations peculiarly dangerous, such as the one described in the testimony for respondent. In a case where it is claimed that there was an obstructed view of the track, which was upon a heavy descending grade, a highway approaching it upon a like grade, a waterfall and sawmill in the neighborhood, to prevent the trains being heard, and possibly a reverberation in the canyon that was calculated to deceive the ear as to the direction of sounds, we think it is proper for the court to submit to the jury the question whether defendant was negligent in not providing a watchman, or some automatic signal, to warn travelers of the approach of trains, especially where the crossing was not a country crossing, but in a village of 300 inhabitants, and the only crossing by which teams could go from one part of the town to the other, and one which of necessity must have been used by a great number of

people. The authorities are not uniform upon this subject, some going even beyond the doctrine that we here hold applicable to the case at bar, and others holding that, unless some statute requires a flagman or automatic warning, a railway company is not negligent in failing to provide one."

■ The court proceeded to quote, with approval, from Thompson on Negligence, section 1527, to the effect that, where the right to cross the track exists, the railway company must use such reasonable care as ordinary prudence would indicate. Such care must be greater at crossings in a populous town or city than at ordinary country crossings. At a city crossing, or where the travel is great, reasonable care would require a flagman, or gates or bars. Generally, what precautions are reasonably necessary for the safety of the public at such crossings is a jury question. As for the contrary view:

"This doctrine which commits the public safety to the tender mercies of the railroad companies until the legislature intervenes ought not to invoke one word in its favor."

2 Thompson on Negligence, section 1537.

Again, quoting from the same author (section 1526), with reference to the fact that electric bell signals at railway crossings were then (1909) coming into use:

"* * * Doubtless it will soon become a recognized rule of law that the failure to have such a signal at a crossing, in the absence of any other adequate means of protecting travelers, will be evidence of negligence to go to a jury."

■ If there is substantial evidence of conditions of unusual hazard, the question is for the jury. We think that there was such evidence in this case. If the situa-

tion was such that due care required a flagman, a watchman, an automatic signalling device, or other precautionary measure, then whatever was reasonably necessary should have been provided. This was a busy crossing, not one in "a village of 300 inhabitants".

The distinction between the case of *Robison v. Oregon-Washington R. & N. Co.*, 90 Or. 490, 176 P. 594, which is relied upon by appellant, was pointed out in our opinion herein. There it appeared that *there was a place of safety* from which the driver could have looked "upon the course of the train" before proceeding to cross the track. Here, the presence of such a place of safety is sought to be demonstrated by mathematical calculations, and still is not so demonstrated. While no doubt the case here is a close one, we think that it was properly left to the jury. The obstruction in the Robison case was a hill; in this case it was a train of box cars, placed in position by defendant.

■ Counsel say that there was no substantial evidence of a failure to give warning, by ringing a bell of the approach of the train. Their argument is that the negative testimony of plaintiff and of one other witness, that they did not hear any bell ring, is not substantial evidence. Plaintiff was listening for the bell, and his hearing was good. We think that the evidence was substantial. Its weight was for the jury.

■ Counsel contend that plaintiff was contributorily negligent as a matter of law. They say that the distinction between the facts in the instant case and those in *Cathcart v. Oregon-Washington R. & N. Co.*, 86 Or. 250, 168 P. 308, (i. e., that the track here was curved, while the track in the Cathcart case was not curved), did not actually exist. They intimate that, while the record in the Cathcart case does not

indicate that oral testimony was given that the track was curved, a map and a photograph in evidence showed that, about 500 feet from the point of collision, the track did curve to the south. In the present case, they say, the track was sufficiently straight that, from the crossing, there was a view of 800 feet northward, and, from a point twenty-one feet east of the center of the main track and four feet north of the center line of Mill Street, a view of 712 feet northward. However, in distinguishing the present case from the Cathcart case, we pointed out that here it appeared that there was no place from which the plaintiff could, with safety, view "the course of the train", the supposed zone of safety being evidently insufficient in extent for that purpose. In the Cathcart case, without analysis, the court assumed the existence of a safe observation point. (The court said: * * * there must have been clearance between the two main tracks else the trains could not have passed each other; hence, there was a place, to wit, in this clearance, from which the plaintiff safely could have viewed the track before going upon it." That the width of such clearance is an important factor, especially in the case of a traveler by automobile, was not taken into consideration by the court.) The facts here, as we pointed out, more nearly resemble those in *Pokora v. Wabash R. Co.*, 292 U. S. 98, 78 L. ed. 1149, 54 S. Ct. 580, 91 A. L. R. 1049, than those in the Cathcart case. The only manner in which the plaintiff here could have looked up the track, in the direction from which the train was approaching, was to have left his car and proceeded forward on foot, a procedure which might well have been futile, as was observed by Justice Cardozo in the Pokora case. Counsel again insist upon the dictum in the Cathcart case

and in *Slusher v. Great Southern R. R. Co.*, 107 Or. 587, 213 P. 420, that the presence of the railway track is in itself sufficient warning to the traveler, that the track shouts "beware" every instant, and that no flagman or signalman can add to such warning. This doctrine, without doubt, is applicable to ordinary crossing accident cases, uncomplicated by features of obstruction of the traveler's view, or other features of unusual hazard, but surely it is not to be applied so strictly as that a person who is injured by a train at a grade crossing must be held to have been contributorily negligent as a matter of law, irrespective of the hazardous condition of the crossing, and of the negligence of the railway company in failing to give warning of the approach of the train.

■ Counsel say that, had the automobile been stopped as much as a second or two before attempting to cross, the accident would not have happened. This is true, but irrevelant. It would have been equally true that the accident would not have happened if plaintiff had not driven his car at all that day, or had taken another route. Counsel argue that: "It is well known to anyone familiar with the operation of an automobile that if the same is standing still and the driver puts his head out the window, his hearing is much more effective than if he remains inside the car and proceeds forward." That may be so, and yet whether or not failure to do so in the present case was contributory negligence was for the jury to decide, and not for the court to declare as a matter of law.

■ Counsel say that plaintiff could have stopped in front of the box cars, there having been no locomotive attached to them, and thence gone forward to reconnoitre on foot. They say: "If, after stopping, looking, and

listening from a point of safety, where such precaution will accomplish the greatest good, the driver neither sees nor hears any approaching train and thereupon proceeds forward and collides with such train, it is time enough to consider whether the driver's case should be submitted to the jury." To follow counsel's argument to its logical conclusion, the court would have to declare, as a matter of law, that, in such a case as the present, the driver must stop his car, go forward on foot to reconnoitre, and then return to his car and proceed over the crossing. As our former opinion pointed out, the weight of authority does not require this. If Fish had stopped at the usual stopping place, it is apparent, assuming the truth of his evidence, that such stopping would not have insured his safety. If we should now declare that there was a duty to stop on the switch track, in front of the box cars, "disconnected from a duty to get out and reconnoitre", we should, we think, be entering "the thickets of conflicting judgments".

Counsel suggest that plaintiff had, besides the choice of going forward without stopping, and that of stopping and getting out to reconnoitre, a third choice, namely, to stop, look and listen, without getting out to reconnoitre. If he had taken such third choice, he could not have looked, unless he had stopped within the so-called zone of safety. Whether or not, under the circumstances, he should have stopped his car in front of the box cars, rather than have done as he did, was, we think, a jury question.

█ Counsel say: "On all the evidence no reasonable person could believe that there actually were box cars on the siding, or that there was failure to give

adequate signals of the train's approach.'' We think, however, that there was substantial evidence upon both of those questions. It is not within our province to pass upon its weight. Certainly, it was not so incredible that the court should have withdrawn it from the jury.

The petition for rehearing is denied.

BRAND, J., concurs in the result.

LUSK, J., dissents.