94 579|
103 53|

94 579
d125 15|

94 579
142 ²381

94 579|
157 ²166|

WILLIAM GRAF, ADMINISTRATOR, ETC., v. THE CHICAGO & NORTHWESTERN RAILWAY COMPANY.

*Injury at railroad crossing—Contributory negligence.*

1. A brakeman who sees a man approaching a railroad track at a street crossing, who can stop with perfect safety when within three or four feet of the track, has a right to presume that he will do so, and is under no obligation to attempt to stop the cars until he sees that the man intends to step in front of them, regardless of the danger.

2. Plaintiff's decedent is held to have been guilty of such negligence, in walking for 30 feet in plain view of an approaching train, and in attempting to cross defendant's track at a street crossing in front of the train, as to bar a recovery.

Error to Menominee.    (Stone, J.)    Argued January 10, 1893.    Decided February 10, 1893.

Negligence case.    Plaintiff brings error.    Affirmed. The facts are stated in the opinion.

*Hayden & Young,* for appellant, contended:

1. A "flying switch," or the "kicking" of detached cars, at a speed of even three or four miles an hour, over street crossings in a populous city, has been often held negligence *per se;* citing *French v. Railroad,* 116 Mass. 537; *Brown v. Railroad Co.,* 32 N. Y. 597; *Butler v. Railway Co.,* 28 Wis. 487, 494, 497; *Railroad Co. v. Baches,* 55 Ill. 379; *Railroad Co. v. Troutman,* 6 Amer. & Eng. R. R. Cas. 117; *Kay v. Railroad Co.,* 65 Penn. St. 269; *Howard v. Railway Co.,* 32 Minn. 214; *Railroad Co. v. Coon,* 111 Penn. St. 430; *Loucks v. Railway Co.,* 31 Minn. 526; *Duame v. Railway Co.,* 72 Wis. 523; *Frick v. Railway Co.,* 5 Mo. App. 435; *McWilliams v. Mills Co.,* 31 Mich. 274; *Battishill v. Humphreys,* 64 Id. 520; *Guggenheim v. Railway Co.,* 66 Id. 159; *Cooper v. Railway Co.,* Id. 262, 264; *Breckenfelder v. Railway Co.,* 79 Id. 560; *Schindler v. Railway Co.,* 87 Id. 400.

*E. E. Osborn,* for defendant.

GRANT, J.   The accident which caused the death of plaintiff's decedent occurred upon defendant's right of way, and upon a public street crossing said right of way nearly at right angles.   Iron Mountain, where the accident occurred, is strictly a mining town, of about 10,000 inhabitants.   The railroad was early constructed to the mines first discovered and opened.   Other mines were afterwards discovered, and, in the course of time, the town was built on each side of the track, which now divides the population about equally.   The situation will be best seen from the map on following page.

The accident occurred upon Flesheim street, which is 70 feet wide, with a sidewalk on the south side 6 feet wide, which extends across the right of way.   This street crosses the defendant's yard, where trains loaded with iron ore are made up for transportation, northward, to the lake port of Escanaba.   The track which diverges eastward at Brown street leads to the Millie mine.   The distance between Flesheim and Brown streets is 260 feet.   Some six or seven cars loaded with ore had been drawn from the Millie mine past the switch between Brown and Ludington streets, and were shunted or backed by the engine into the yard.   The east track is the main one.   Eleven feet west of the main track is a side track, leading to the coal sheds of the Chapin mine, 200 feet north of the crossing.   Twenty-one and a half feet west of this side track is another track, leading to a lumber yard.   The tracks are level.   At or near the Brown-street crossing, the engine was detached from the cars, having imparted sufficient momentum to propel them to the required place in the yard,

The deceased worked at the Chapin mine, on the east side of the track and north of the crossing, and lived on the west side, about three blocks from the crossing.   He was 25 years of age, and in the full possession of all his

faculties.    He was proceeding to his work on the side-
walk on the south side of Flesheim street, and, just as he
stepped upon the middle or main track, was struck by the
first car, and injured so that he died shortly after.    Plaint-
iff claims that the deceased was struck upon the middle
track, while defendant claims that he was struck upon the
main track.    This is the main fact in dispute in the case,
but, in the view we take of the case, it is immaterial upon
which track the accident occurred.

These cars were shunted or backed in the usual manner.
The deceased was familiar with the situation, and with the
manner in which the work was done.    He had crossed
these tracks daily for about two months.    He approached
and crossed the track at a rapid walk.    It was
broad daylight, about 6:30 P. M., in June, and the sun
was shining at his back.    His view of the tracks to the
south was more or less obstructed by the lumber piled
along and near defendant's right of way, but as he
reached the right of way he had a clear and unob-
structed view for 1,000 feet to the south.    There is evi-
dence that as he reached that point he looked to the
south, but did not stop or slacken his speed, and was
not seen to look again before he was struck.    At this
point he was fully 30 feet from the middle track.    No
other cars were upon the track, and there was nothing to
obstruct his view of the approaching train.    One disinter-
ested witness, Henry Remy, stood in the office of the city
lumber yard, on the north side of the street, saw him walk
across, saw the train coming, and testified that he never
thought deceased would walk across in his position.    Wit-
ness immediately went over on seeing the accident, and tes-
tified that the deceased said, " Why did I try to cross the
track?    I thought the cars were on the other track."

It is charged in the declaration that the defendant was
guilty of gross negligence in running said cars over this

street crossing at a great and reckless speed, and faster than six miles per hour, detached from the locomotive, and unaccompanied by any brakeman or switchman upon the moving cars, at or near the forward end thereof, to give warning of their approach in case of emergency, and without giving any signal or warning from the locomotive of their approach.

Upon the conclusion of the evidence the learned circuit judge directed a verdict for the defendant.

All the witnesses who testified to the accident say that they saw the train approaching, and heard the noise made by the puffs of the engine and the cars, and that the cars were shunted back in the usual manner. There is no evidence of any reckless speed, and it conclusively appears that there was a brakeman upon the cars. The brakeman himself was called as a witness by the plaintiff, and testified that he was standing upon the platform between the second and third cars as they were advancing. Two other witnesses also testify that they saw a man running along the tops of the cars as they were advancing. Had the brakeman seen the deceased as he was approaching, he certainly would have had the right to presume that he would stop. He might have stopped with perfect safety when within three or four feet of the track. No obligation rested upon the brakeman to attempt to stop the cars until he saw that the deceased intended to step in front of them, regardless of the danger. It would then have been impossible for him to stop the train in time to avoid the accident. We think the direction of the circuit judge is clearly within the following authorities: *Grostick v. Railroad Co.*, 90 Mich. 594; *Apsey v. Railroad Co.*, 83 Id. 439; *Mynning ·v. Railroad Co.*, 64 Id. 93; *Freeman v. Railway Co.*, 74 Id. 86; *French v. Railway Co.*, 89 Id. 537; *Pzolla v. Railroad Co.*, 54 Id. 273; *Kwiotkowski v. Railway Co.*, 70 Id. 549.

Many other authorities might be cited, but we deem it unnecessary. To hold that the plaintiff might recover under the undisputed facts of this case would be to reverse the previous decisions of this Court. The deceased walked for 30 feet in plain view of the approaching train, which could be seen by him at a glance. If the negligence of the defendant was gross and reckless, the negligence of the deceased was equally so.

The position of the learned counsel for the plaintiff that if the deceased looked to the south, and saw the approaching train, he had the right to assume that he could cross before the train would reach him, cannot be maintained. There was nothing in the situation to throw him off his guard or create confusion. Granting, as the plaintiff's counsel argued, that deceased, as he reached the first track, looked and saw the approaching train, and that it was then 100 feet distant from the sidewalk, still it was his duty to watch the train, and control his own movements in relation to it, and this duty would be more imperative upon him if he saw no one in charge of the train. Even if the train were then at a greater distance, it was all the time within his view, and his duty remained the same.

The facts in the case of *Detroit & Milwaukee R. R. Co. v. Van Steinburg*, 17 Mich. 99, are very different from the facts in the present case, as will appear from the majority opinion, on page 124, and the majority opinion is not an authority applicable to this case; but even the point to which the case is now cited was sustained by only two of the Justices, one not sitting, and the other dissenting.

Judgment affirmed.

The other Justices concurred.