Argued October 4, reversed December 29, 1928.

## ED STOVALL *v.* PORTLAND ELECTRIC POWER COMPANY.

(273 Pac. 701.)

For appellant there was a brief over the name of *Messrs. Griffith, Peck & Coke*, with an oral argument by *Mr. Cassius R. Peck*.

For respondent there was a brief over the name of *Messrs. Lord & Moulton,* with an oral argument by *Mr. Arthur I. Moulton.*

BELT, J.—This is an action to recover damages for personal injuries resulting from a collision between an autotruck driven by the plaintiff and an interurban electric car operated by the defendant company. The accident occurred at a point where the county road intersects the railroad track at Glen Echo station about midway between Portland and Oregon City. It is a suburban district. The crossing, with which plaintiff was very familiar, is at grade and the track in this particular locality is straight for several hundred feet. It was daylight and there was nothing to obstruct the view of plaintiff, excepting a small waiting station near the track, and, as plaintiff says, some telegraph poles parallel with the track, approximately 90 feet apart. Reference to the following plat may be of assistance in understanding the statement of the case.

Plaintiff was driving his four-ton Federal truck north on Abernathy Lane. He says that when he reached Steele Avenue and turned west thereon he looked in a northerly direction but did not see any train. This point of observation was approximately forty feet from the track. He drove on at the rate of five miles per hour, as found by the jury, and did not look again to his right for an approaching train until he had passed behind the waiting station and the front wheels of his truck were seven feet from the east rail of the track. He states that at this point he had a view of the track north for a distance of 200 feet and that he did not see any train approaching. Plaintiff thus describes what occurred thereafter:

"I turned my head and looked back towards Gladstone (to the south); I didn't see anything; by that time my wheels were in the center of the track, and I turned my head (to the north) and I saw a car that was about sixty or sixty-five feet from me; * * . The only thing to do was to get across the track if I could; I was going about six miles an hour."

Under the special findings of fact submitted, the jury found that the electric car, within 400 feet north of the point of collision, attained a speed of about 35 miles per hour. If this be true, when the plaintiff looked at a point 40 feet east of the track as he made the turn at the intersection of Abernathy Lane and Steele Avenue, the electric car must have been approximately 280 feet from the point of collision, since it was traveling at a rate of speed seven times that of plaintiff. Plaintiff says that the view was obstructed on account of a row of telegraph poles which appeared "almost like a wall" and that "sometimes you can't see a car coming." In this connec-

tion it is well to bear in mind that these poles were about 90 feet apart and that there could not have been more than four poles to obstruct the view had he looked when the car was 350 or 400 feet from the crossing. Photographic exhibits in evidence absolutely refute the testimony of plaintiff that these poles looked "like a wall." Of course they might have some semblance to a wall if plaintiff were looking at a greater distance down the track, assuming that he looked from the same angle.

■ On the authority of *Morser* v. *Southern Pacific Co.*, 124 Or. 384 (262 Pac. 252), and cases therein cited, plaintiff was guilty of contributory negligence, as a matter of law. In the Morser case plaintiff was struck by an electric train in a suburban district similar to the one under consideration. The night was dark and there was a dense fog which tended to obstruct the view of an approaching train. The facts were far more favorable in that case to a recovery than in this one, yet relief was denied. We see no need to restate the law as therein announced. It is controlling here. The facts disclose that plaintiff's dilemma is either that he was negligent in not looking from a place whence he could see whether a train was coming, or, if he did look from such a point, he was negligent in attempting to beat the train across the track. We see no material distinction between this case and that of *Baltimore & Ohio R. R. Co.* v. *Goodman*, 275 U. S. 66 (72 L. Ed. 167, 28 Sup. Ct. Rep. 24).

■ Counsel for respondent contends that a different rule is applicable to an interurban electric railway operating in a suburban district than that applied to steam railroad lines which operate at high speed in comparatively open country. In the Goodman case the collision occurred between a truck and a rail-

road train at a grade crossing in an unincorporated village. The evidence disclosed that the train was traveling at the rate of 60 miles per hour. See statement of facts as reported in 10 Fed. (2d) 58. In the instant case the defendant company was operating over a privately owned right of way and the collision occurred outside the corporate boundaries of any city. It may be said that the rule with reference to the duty of a person approaching a railroad track is equally applicable to electric railways which are being operated under conditions similar to those under which steam railroads are ordinarily operated. That is to say, as much care and caution is required of a person crossing the tracks of an electric railway upon a private right of way in comparatively open country as is required of a person crossing the tracks of a steam railway: *Billig* v. *Southern Pacific Co.,* 192 Cal. 357 (219 Pac. 992); *New York Lubricating Oil Co.* v. *United Railroads,* 191 Cal. 96 (215 Pac. 72); *Brooks* v. *Muncie & P. Traction Co.,* 176 Ind. 298 (95 N. E. 1006). See cases enumerated in note to *Cable* v. *Spokane & Inland Empire R. R. Co.,* 50 Wash. 619 (97 Pac. 744, 23 L. R. A. (N. S.) 1224.)

■ Plaintiff seeks to uphold the verdict on the doctrine of the last clear chance. In stating the issues the trial court very properly eliminated this doctrine from the consideration of the jury, no objection being offered on the part of counsel for the plaintiff. Counsel is not permitted to abandon a theory in the Circuit Court and resurrect it on appeal in this court. There is no evidence in this case to warrant the application of this doctrine: *Emmons* v. *Southern Pacific Co.,* 97 Or. 263 (191 Pac. 333).

Defendant was entitled to a directed verdict in its favor. It follows that the judgment of the lower court is reversed and that the action is dismissed.

REVERSED.

RAND, C. J., and McBRIDE and BEAN, JJ., concur.