Argued January 15, reversed July 2, 1958

# McNEALY *v.* PORTLAND TRACTION COMPANY

### 327 P. 2d 410

*Lamar Tooze, Jr.*, and *Lamar Tooze*, Portland, argued the cause for appellant. On the briefs were Phillips, Coughlin, Buell & Phillips, Portland.

*Ray G. Brown*, Portland, argued the cause for respondent. With him on the brief were Easley & Whipple, Portland.

Before PERRY, Chief Justice, and ROSSMAN, BRAND, and McALLISTER, Justices.

PERRY, C.J.

This is an action brought by the plaintiff against the defendant to recover damages for injuries suffered by the plaintiff in a collision of the plaintiff's automobile and the defendant's electric trolley car.

The facts of the occurrence and the scene of the accident are as follows:

McLoughlin Boulevard (also designated as the route of U. S. 99E) is, in this area, a four lane highway which runs generally north and south between Milwaukie and Oregon City. The tracks of the defendant for a considerable distance, both north and south of the place where the collision occurred, lie to the west of and generally parallel with the highway. Connecting with,

but not bisecting, McLoughlin Boulevard, and south of Milwaukie, is a paved road designated as River Road. This road runs generally west for some distance from the point where it connects with the boulevard and crosses the defendant's tracks at almost a right angle. From the nearest edge of the boulevard to the defendant's tracks on River Road the distance is 60 feet and the road is about 47 feet wide where it crosses the tracks. To the south of this intersection of the boulevard and the road, both the boulevard and the tracks curve gently to the east and the tracks of the defendant are on a slight downgrade from south to north.

The plaintiff had been employed for a period of approximately two weeks in the construction of a building to the south and west of Milwaukie. He reached his place of employment by driving south from Milwaukie on the boulevard, then along River Road, crossing the defendant's tracks to the building site. He had been over the route approximately 30 times. On the morning of June 15, 1954, the plaintiff picked up a co-worker in Portland and then drove to Milwaukie where they stopped for a cup of coffee before proceeding toward their place of employment. Upon leaving the coffee shop they proceeded south on McLoughlin Boulevard, at a speed which the plaintiff estimated at between 25 and 30 miles per hour, to the junction of River Road where they turned west on River Road, traveling 60 feet along this road to the railway crossing where this accident occurred. Plaintiff estimated his speed on River Road at from 10 to 15 miles per hour. Plaintiff further testified there was at this time (7:45 a.m.) some rain falling, but the visibility was good and could be considered the same as when entirely clear; that he looked to his left and to

his right as he turned onto River Road and saw no approaching trolley car, and he looked again when he was 15 to 20 feet from the tracks, but saw nothing approaching, so he proceeded, without stopping, onto the tracks and was struck by defendant's trolley approaching from the south, defendant's left.

Plaintiff also testified his vision was limited along the tracks to the south, the direction from which defendant's trolley was approaching, to a distance which he estimated to be between 50 and 75 feet, because of some shrubs and trees located to the east of the tracks. He also testified his window was open and he listened but heard no whistle or warning of any kind of the approach of the trolley. The plaintiff offered no evidence of the speed of the trolley, but defendant's witnesses estimated the speed from 10 to 20 miles per hour.

There was admitted in evidence without objection a photograph which clearly shows the intersection of River Road and McLoughlin Boulevard, the 60 feet of River Road from the west edge of McLoughlin Boulevard to and including the intersection of River Road and the interurban tracks and a portion of the road west of these tracks. This photograph was taken, as measured by engineer's tape, 150 feet south of the grade crossing looking north along the defendant's tracks, and it is clear that a trolley car approaching the intersection is visible a distance of at least 150 feet to anyone looking to the south from any point on River Road from the boulevard to the grade crossing.

Plaintiff's complaint alleged negligence on the part of the defendant and its motorman in the following particulars: (1) In failing to sound any warning by whistle, bell or other device, of the approach of said interurban car; (2) in traveling at an excessive rate

of speed under the circumstances; (3) in failing to keep the interurban car under proper or any control; (4) in failing to keep a proper lookout; and (5) in failing to yield the right of way to plaintiff's auto.

Defendant's answer denied the above and alleged that plaintiff was guilty of contributory negligence in that he (1) failed to keep a lookout; (2) failed to yield the right of way; (3) drove at a greater speed than was reasonable; (4) failed to stop, turn or swerve to avoid the collision; and (5) failed to keep his auto under proper control.

At the conclusion of the case defendant moved for a directed verdict on the grounds that plaintiff had presented no substantial evidence of any negligence on the part of defendant, and, furthermore, that the evidence showed the plaintiff to be guilty of contributory negligence as a matter of law. The trial court denied defendant's motion and the case was submitted to the jury. The plaintiff recovered a judgment against the defendant. From this judgment the defendant appeals, alleging that the trial court erred in failing to sustain defendant's motion for a directed verdict and its motion for judgment n.o.v. There were other alleged errors, but in view of the fact we believe a directed verdict should have been given for the defendant, it is not necessary to discuss these alleged errors.

■ Where, as in the instant case, the plaintiff has the benefit of a jury verdict, it is well-established that in determining whether the trial court erred by not directing a verdict or entering a judgment n.o.v., the evidence must be interpreted in the light most favorable to the plaintiff. *Stout v. Madden & Williams,* 208 Or 294, 300 P2d 461. Plaintiff is entitled to the benefit not only of his own testimony and evidence but also of any evidence favorable to him which is introduced by

the defendant. *Doty v. Southern Pacific Co.,* 186 Or 308, 207 P2d 131.

■ We have kept these well-established rules of law in mind in setting forth the account of the facts in this case. In this connection, however, it should be noted that plaintiff's estimate of the distance from River Road south to a point where a trolley car approaching the grade crossing would first be visible (50 to 75 feet) cannot be accepted as a fact where the measured distance from which the photograph was taken, when conditions were the same, establishes the fact of clear visibility for a distance of at least 150 feet. *Spencer v. Southern Pacific Co.,* 199 Or 246, 260 P2d 956; *Van Zandt v. Goodman et al.,* 181 Or 80, 179 P2d 724.

Therefore, we have before us, presented by plaintiff's evidence, these facts: (1) He looked but did not see the trolley car approaching, which was visible at least 150 feet before reaching the intersection; (2) he listened and, although there were no distracting noises, he did not hear the approach of the trolley.

For purposes of this case we assume no warning was sounded by the interurban trolley, although there is the testimony of numerous independent witnesses that the whistle of the trolley car was blown several times just prior to reaching the grade crossing where the accident occurred.

Assuming, then, there is some evidence of the defendant's negligence, whether or not the plaintiff was guilty of contributory negligence as a matter of law raises the question of what standards are to be applied in railroad crossing accidents in order to determine such contributory negligence.

Plaintiff urges that the strict rules relative to railroad crossing collisions have been abandoned, and that recent decisions of this court clearly demonstrate a

retreat from the "stop, look, listen and reconnoiter" standard and an embracing of the "reasonable man" test in its stead. Citing *Doty v. Southern Pacific Co.,* supra, and *Fish v. Southern Pacific Co.,* 173 Or 294, 143 P2d 917, 145 P2d 991. He maintains that the modern Oregon rule requires the traveler approaching a grade crossing to use only that degree of care which an ordinarily prudent person would use under the same or similar circumstances.

A great many Oregon cases may be cited to support what plaintiff terms the "strict rule" of contributory negligence. *Andersen v. Southern Pacific Co.,* 165 Or 368, 106 P2d 1048; *Stovall v. Portland Elec. Power Co.,* 127 Or 518, 273 P 701; *Kirby v. Southern Pacific Co., et al.,* 108 Or 290, 216 P 735; *Robison v. Oregon-Wash. R. & N. Co.,* 90 Or 490, 176 P 594; *Cathcart v. Oregon Washington R. & N. Co.,* 86 Or 250, 168 P 308; *Hecker v. Oregon Railroad Co.,* 40 Or 6, 66 P 270.

It is not necessary for us to set forth the facts in *Fish v. Southern Pacific Co.,* supra, as they are fully set out in that opinion. It should be noted, in that case there existed at the railroad crossing conditions which made the passage over the tracks extra-hazardous, and this court relaxed the rule of law that a motor traveler at a railway crossing whose view of approaching trains is obstructed is required to stop his automobile at a safe place and "go forward on foot to a point where an unobstructed view of the track may be obtained." To this extent this court overruled its previous expressions in *Robison v. Oregon-Wash. R. & N. Co.,* supra, and *Cathcart v. Oregon-Washington R. & N. Co.,* supra. The court, however, approved its previous statement of the rule of law as to "looking and listening" as set forth in the Robison case, page 502:

"All the precedents make it incumbent upon the

traveler both to look and listen. Neither of them can be eliminated without (sic) its use is practically impossible. The law does not excuse him from exercising both of them, unless there is no reasonable opportunity for that purpose."

In *Doty v. Southern Pacific Co.,* supra, we find another case where a traveler was injured at an extrahazardous railway crossing where conditions then existing limited to a high degree the travelers vision and hearing. The plaintiff was not required to leave her automobile and was only required to see what might have been seen therefrom, but we find nothing therein which detracts from the stated rule of law set forth in *Robison v. Oregon-Wash. R. & N. Co.,* supra, as approved in *Fish v. Southern Pacific Co.,* supra, at a reasonably normal grade crossing.

■ From a thorough consideration of all of these opinions, it is still the law of this jurisdiction that a traveler approaching railway tracks must, when there is reasonable opportunity to do so, look and see what is to be seen or be guilty of conduct barring his recovery.

"No case has been produced and we opine none can be which excuses the traveler from both looking and listening as he approaches a crossing; and it is well settled that, especially where he is familiar with the situation, he must use greater care as the danger is greater. It is also reasonable as well as established by authority that he must look from a place where he can see and listen from a place where he can hear and that this duty is imperative so long as there is any need of its exercise; in other words, until the danger no longer exists. While the law in some instances will not require doing a vain thing it will not be satisfied with doing a vain thing where there is an opportunity for doing an effectual act. To have looked where he could not see

when there was a practicable place from which he could have looked in safety is equivalent to not looking at all. The traveler has no right to depend exclusively on his hearing when there are attendant noises which materially interfere with the exercise of that function and he has a convenient opportunity to look both ways along the track in safety before crossing." *Cathcart v. Oregon-Washington R. & N. Co.,* supra, at page 259.

It should be noted, the above statement has been modified to the extent that it seems to hold there may never be circumstances existing which will excuse the traveler from seeing or hearing the approach of a train at a railway crossing.

The plaintiff relies upon *Doty v. Southern Pacific Co.,* supra, for his contention that a traveler approaching a grade crossing is required to use only that degree of care that a reasonably prudent person would use under the same or similar circumstances.

"A railroad crossing is an inherently dangerous place, and a traveler is bound to exercise care commensurate with the known hazards, and what is required depends upon the circumstances of each case. Courts are not at liberty to state, as a matter of law, that one must conduct himself in a particular manner in each case and under all conditions." *Doty v. Southern Pacific Co.,* supra, p. 333.

We do not understand this statement to mean that in every action involving a collision between a traveler and a train at a grade crossing the test is what a reasonably prudent person would have done under the same or similar circumstances. This statement read in harmony with the facts and quotation taken from *Grand Trunk Ry. Co. v. Ives,* 144 US 408, 417, 36 L ed 485, 12 S Ct 679, can only be applicable when it appears from the evidence a traveler's vision of an approaching

train is so limited by obstructions that reasonable minds may differ on whether or not under these circumstances a reasonably prudent person would have proceeded to the crossing, relying upon the use of his other senses to warn him.

■ The facts of this case cannot possibly bring the plaintiff within the benefit of this rule, because they demonstrate that from any point on River Road east of the defendant's tracks (a distance of 60 feet) the plaintiff had an opportunity to see the trolley car of the defendant come into view a distance of at least 150 feet before it reached the intersection where the collision occurred. There are no facts upon which anyone can draw even the slightest inference that had he observed the trolley car when it first came into view the collision would nevertheless have occurred.

The facts of this particular case constrain us to hold the plaintiff contributorily negligent as a matter of law.

The judgment is reversed with instructions to enter judgment for the defendant.