Argued November 13, 1959, reversed January 13, petition for
rehearing denied February 9, 1960

SCHWESINGER ET AL *v.* HEBERT ET AL

348 P. 2d 249

Herbert H. Anderson, Portland, argued the cause for appellants. With him on the briefs were Koerner, Young, McColloch & Dezendorf, Portland.

Fred H. Bernau argued the cause for respondents. On the brief were Horn & Slocum and Bernau & Wilson, Roseburg.

Before McAllister, Chief Justice, and Perry, O'Connell and Redding, Justices.

REDDING, J. (Pro Tempore)

This is an action at law brought by the plaintiff Schwesinger and the collision insurer of plaintiff Schwesinger's truck, the National Surety Corporation, to recover for damage to plaintiff Schwesinger's logging truck and for the loss of use thereof resulting from a collision between said truck and a locomotive belonging to defendant Southern Pacific Company.

The accident occurred on the Southern Pacific main line where a county road, known as Wilbur North Road, crosses said railroad track about six miles north of Roseburg. Former U. S. Highway 99 runs in a general northerly and southerly direction parallel to said railroad track. The easterly edge of the paved portion of said highway at the point of said accident

lies approximately 48 feet west of the westerly rail of said track. The defendants' locomotive without cars attached was proceeding north, and the logging truck had been proceeding south on said former U. S. Highway 99. After making a left turn into Wilbur North Road, plaintiffs' truck was struck by defendants' locomotive. The truck was damaged, but plaintiffs' driver and a passenger escaped injury by abandoning the truck on the railroad track when it became evident to the driver that a collision was imminent.

Plaintiffs in their complaint alleged that the defendant Southern Pacific Company's engineer, Delbert Hebert, was negligent in the following particulars, to-wit: (1) that said Delbert Hebert negligently and carelessly failed to stop said locomotive so as to avoid a collision with the said logging truck of plaintiff Schwesinger; (2) that said Delbert Hebert negligently and carelessly failed to have or keep a proper or any lookout for motor vehicles then upon and using the said County Road No. 170, and particularly for the said Reo logging truck of plaintiff Schwesinger; (3) that said Delbert Hebert negligently and carelessly drove and operated the said locomotive at a high and dangerous rate of speed, to-wit: forty (40) miles per hour, considering the obstructed view along said right of way of defendant, and all other conditions existing at the time and place of said collision; (4) that said Delbert Hebert negligently and carelessly failed to give an adequate and proper, or any, horn or bell signal to warn vehicles of the approach of the said locomotive along the said right of way of defendant.

Defendants in their answer deny the above charges of negligence and allege that Earl Narramore, the driver of plaintiff Schwesigner's logging truck, was

guilty of contributory negligence in that he (1) failed to keep a proper or any lookout, and particularly failed to look out for and see the train operated by the defendants; (2) failed to keep said loaded logging truck under proper or any control; (3) failed to stop said loaded logging truck no less than ten feet nor more than fifty feet from the nearest rail of said railroad track and while so stopped to look and listen in both directions along the track for approaching trains; (4) failed to heed the plainly audible train whistle and bell sounded by defendants, warning of the approach of said train; (5) stopped the said loaded logging truck with the cab of the truck on the railroad tracks, under the circumstances then and their existing.

At the conclusion of the case, defendants moved for a directed verdict on the ground that the plaintiffs had presented no substantial evidence of any negligence on the part of the defendants, and upon the further ground that the evidence showed the driver of plaintiffs' truck to be guilty of contributory negligence as a matter of law. The trial court denied defendants' motion, and the case was submitted to the jury. Based on a jury verdict, the plaintiffs recovered a judgment against the defendants. From this judgment the defendants appeal, contending in their first assignment of error that the trial court erred in failing to sustain defendants' motion for a directed verdict and their motion for judgment notwithstanding the verdict. In the only other assignment of error defendants contend the trial court erred in failing to withdraw from the jury the first specification of negligence alleged in plaintiffs' complaint.

■ In considering defendants' first assignment of error, it will be necessary to consider the evidence of-

fered upon the trial in the light most favorable to the plaintiffs, for, as Mr. Justice PERRY, speaking for the court in *McNealy v. Portland Traction Co.,* 213 Or 659, 663, 327 P2d 410, points out:

> "Where * * * the plaintiff has the benefit of a jury verdict, it is well-established that in determining whether the trial court erred by not directing a verdict or entering a judgment n.o.v., the evidence must be interpreted in the light most favorable to the plaintiff. Stout v. Madden & Williams, 208 Or 294, 300 P2d 461. Plaintiff is entitled to the benefit not only of his own testimony and evidence but also of any evidence favorable to him which is introduced by the defendant. Doty v. Southern Pacific Co., 186 Or 308, 207 P2d 131."

Keeping the above doctrine constantly in mind, a review of the facts in the instant case may be summarized as follows: The accident occurred at approximately 6:45 p. m. on July 22, 1954. The day was clear and it was daylight at the time. Just prior to the accident plaintiff Schwesinger's loaded logging truck, which was approximately 62 feet in length, was proceeding southerly on Highway 99, and in preparation for a left turn into Wilbur North Road was brought to a stop with the front end of the truck approximately seven feet to the east of the easterly edge of the paved portion of the highway. According to plaintiff Schwesinger and his driver, Earl Narramore, the place where the truck was stopped before making the turn into Wilbur North Road offered the best view of the railroad track to the south. At that point the driver of the truck was able to see the railroad track to the south for a distance of 250 to 300 feet. After listening for a warning and looking first to his right and then to his left, Narramore proceeded into Wilbur North Road at a speed of 2½ to 3 miles per hour.

Narramore had previously traversed the crossing 150 to 200 times and, after stopping as above indicated, did not again look to his right until he was upon the track.

As plaintiffs' truck proceeded after so stopping, the view to the south narrowed and closed until at a point 15 to 20 feet from the track brush, signs and poles entirely blocked the view to the south. Visibility through the opening between poles, signs and brush was further impaired by a breeze which was moving the brush. As plaintiffs' truck proceeded the last 15 to 20 feet before reaching the track, a view along the track to the south was not again available until the driver sitting in the cab of the truck behind the wheel passed the crossbuck sign which was 12 feet, 5 inches from the most westerly rail to the track. The driver's seat in the truck was 5 or 6 feet to the rear of the front bumper. When the driver seated in the truck was two feet (to the east) past the crossbuck sign, he had an unobstructed view to the south for approximately 600 feet. As he drove toward the track, Narramore was watching the scaler at the log dump across the track to see whether he was to be directed to the right or left of the scaler's platform, and as he drove on to the track he observed the scaler waving his arms in an attempt to direct his attention to the approaching locomotive. This caused Narramore to look to his right where he observed the train approaching at a distance of 100 feet. Narramore shouted to his passenger, Julian Hagen, and both jumped from the truck, leaving it standing on the track. The cab was torn from the truck and the truck was otherwise damaged.

While the evidence is conflicting upon the subject of the manner in which the locomotive was being oper-ated at the time of and immediately prior to the col-

lision, for purposes of this appeal we must accept plaintiffs' contention that meanwhile the locomotive came around the curve and from behind a hill some 600 feet to the south and proceeded to the point of collision at 40 miles per hour without slackening its speed and without giving any warning. For purposes of this appeal we will assume without deciding that there was evidence of negligence on the part of the defendants. It thus becomes necessary to decide whether or not plaintiffs' driver was, as a matter of law, guilty of contributory negligence in one or more of the particulars charged in defendants' answer.

■ Plaintiffs' driver had a duty to keep a lookout for defendants' locomotive. *Olds v. Hines,* 95 Or 580, 590, 187 P 586, 188 P 716; *Robison v. Oregon-Washington R. & N. Co.,* 90 Or 490, 502, 176 P 594; *Cathcart v. Oregon-Washington R. & N. Co.,* 86 Or 250, 168 P 308.

■ The undisputed evidence clearly shows that plaintiffs' driver failed to keep a proper lookout. The stop, and the look, first to the right and then to the left, which plaintiffs' driver made some 47 feet from the defendants' track did not fulfill the obligation of said driver to keep a lookout under the attending circumstances.

We hold that where, as here, the operator of a truck knows, or in the exercise of reasonable care should know, from his frequent previous use of a railroad crossing, that by stopping 4 or 5 feet from the rails an otherwise unobtainable, unobstructed view of the track for 600 feet can be had, failure of said driver to so stop and look is negligence. This is particularly true in the instant case where we have a heavily loaded truck wholly incapable of rapid acceleration making a right angled turn and proceeding on an up-

grade from a stopped position for a distance of 45 feet without the driver so much as casting a second glance to the right.

Indeed, for a truck 62 feet in length to safely attempt to cross a railroad track at a speed of 2½ to 3 miles per hour, a view for a minimum distance in excess of 300 feet from a position immediately adjacent to the tracks would be essential to avoid danger of being hit by a train moving 12½ to 15 miles per hour. Plaintiffs' driver in the instant case in proceeding without looking to the right after having stopped more than 40 feet from the track became committed in so proceeding to traverse approximately 110 feet before the rear end of the truck would clear the easterly rail of said track. Such conduct tends to indicate an "I don't care what happens attitude." Rather than indicating a complete indifference to consequences, such conduct on the part of plaintiffs' driver probably finds explanation in the following statement made in behalf of the plaintiffs, which we have taken from plaintiffs' brief.

> "There was increased hazard to highway traffic if the plaintiff's log truck stopped nearer the tracks. The overall length of the truck, trailer and its load of logs was approximately 62 feet and entirely blocked Highway 99 as the truck stopped at the edge of the pavement to enable the driver to look and listen before crossing the tracks. To stop nearer the track would partially block the highway and permit highway traffic to attempt passage behind the extended load of logs. When the truck started forward the swing of the logs could strike the traffic so passing. There was traffic present at the time, and a waiting south bound car had stopped behind the truck as it blocked the highway."

The hazards to automobile traffic on Highway 99, resulting from the length of plaintiffs' truck and the load thereon and the fact that the truck was so constructed and loaded as to cause the overhang of the logs at the rear to whip around in making a right angle turn, thereby endangering vehicular traffic, are all matters which were within the exclusive control of the plaintiff Schwesinger and in no way excuse him from the duty to keep a lookout for and to stop and yield the right of way to defendants' locomotive.

Plaintiffs in their brief concede, as indeed they must, that the driver of a motor vehicle upon a highway has a duty in approaching a railroad crossing to keep a lookout for railroad traffic and to stop and yield the right of way to a locomotive upon the railroad track. Plaintiffs urge, however, that a motorist approaching a grade crossing has no absolute duty to observe traffic thereon, but with respect to lookout is required to exercise only that degree of care which a reasonably prudent person would use under the same or similar circumstances.

In *McNealy v. Portland Traction Co.,* supra, decided subsequent to the filing of plaintiffs' brief herein, a contention was made by the plaintiff therein that the modern Oregon rule requires a motorist approaching a grade crossing to use only that degree of care which an ordinarily prudent man would use under the same or similar circumstances. After reviewing the decisions of this court upon the subject of lookout at railroad crossings, Mr. Justice PERRY, speaking for the court, stated the rule as follows:

> "From a thorough consideration of all of these opinions, it is still the law of this jurisdiction that a traveler approaching railway tracks must, when there is reasonable opportunity to do so, look and

see what is to be seen or be guilty of conduct barring his recovery."

We hold that the decision in *McNealy v. Portland Traction Co.* is determinative of the contention made by the plaintiffs herein with reference to lookout, and that the plaintiffs' driver, having failed to look to his right before going upon the railroad track when there was a reasonable opportunity to do so, was negligent as a matter of law.

The judgment is reversed with instructions to enter a judgment for the defendants.