Argued October 4, 1962, reargued February 6, reversed
March 28, 1963

# STRUBHAR *v.* SOUTHERN PACIFIC COMPANY
### 379 P. 2d 1014

*David P. Templeton,* Portland, argued the cause for appellant. With him on the briefs were Dusenbery, Martin, Beatty & Parks, Portland.

*James H. Clarke,* Portland, argued the cause for respondent. With him on the brief were Koerner, Young, McColloch & Dezendorf and John Gordon Gearin, Portland.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, SLOAN, O'CONNELL, GOODWIN and DENECKE, Justices.

## SLOAN, J.

This was an action for the alleged wrongful death of plaintiff's decedent. The death resulted from a collision between a truck operated by the deceased and one of defendant's mail-passenger trains. The trial court allowed defendant's motion for an involuntary nonsuit and plaintiff appeals. It is necessary to decide if the deceased was guilty of contributory negligence as a matter of law.

The grade crossing where the accident happened is on the Corvallis-Lebanon Highway (State Highway 34). It is about 150 yards east of the intersection of that highway and U. S. Highway 99E. At the grade crossing the highway and the railroad cross at right angles; the highway extends east and west; the railroad north and south. Each is straight and level for any distance from the crossing that is material to this case. The deceased, Herbert Strubhar, had ap-

proached the crossing from the west; the train approached from the south. The accident demolished the truck and Strubhar was killed instantly. The accident happened in the late afternoon of August 1, 1961. Visibility was not impaired by weather or darkness. Before Strubhar reached the crossing he had approached the intersection of the Corvallis-Lebanon Highway and Highway 99E. He stopped before crossing that intersection and drove from that point to the crossing at a slow speed. From the intersection he followed a few feet behind another car. The car ahead successfully crossed the tracks. The occupants of that car were witnesses. Also, Strubhar's truck was followed by another truck, the driver of which was an eye-witness to the accident. There were two cars simultaneously approaching the crossing from the east. The occupants of these cars were also witnesses. The foregoing is a general statement of the situation prevailing at the time of the accident.

The crucial facts in respect to the alleged contributory negligence are these: The railroad crossing was protected by warning signals. The signals were of the type commonly used at rural grade crossings. At the approach of a train the signals flashed a red light and sounded a bell. The signals were situate both to the left and right of a driver approaching the crossing. On the day of the accident a crew of workmen had been replacing rails at this crossing and the signals had been disconnected. Although there is some dispute in the evidence, we must accept as a fact that the signals were not working at the time of the accident. Strubhar had driven over this crossing hundreds of times. Some of the witnesses were daily or frequent users of the same route.

There was testimony, we must accept as true, that

the train was traveling at a speed of 85 to 100 miles per hour, much in excess of its normal speed.

Immediately before the collision as Strubhar's truck was approaching the crossing, one of the work crew, sensing the danger, waved his arms and shouted in an apparent attempt to warn Strubhar. This man would have been to Strubhar's left and on the east side of the tracks. This action by the workman was described by the driver of the truck immediately following Strubhar:

"A As he approached the tracks down in this area, I noticed a man alongside the tracks over here coming toward him and waving his arm and talking. He was saying something and looked like he was kind of desperate about something. The first thing I thought of was there must be some kind of danger, from his actions. I was still back in this area someplace, I think, when I noticed this.

"The first thing I thought of, I think, was a train, and I looked at the lights and didn't see any lights flashing, so I assumed there wasn't a train. Unconsciously, I looked up the track, and then I did see a train up in this area someplace. I don't remember if I saw the front, or the middle, or what it was. So then, I looked back again and checked the lights because I thought surely the lights are working if there is a train coming. The lights weren't working. Then I checked the truck again trying to determine if he was going to make it across the tracks or not, and in those few seconds, it was over.

"Q Did it look to you like the truck was going to make it across the track?

"A I thought he was going to.

"Q What portion of the truck was hit by the train?

"A The way it looked to me, it was the very rear of the truck.

"Q Did you hear any whistles?
"A No."

The facts just stated were those most favorable to plaintiff. The evidence which would have supported a finding of contributory negligence was: When Strubhar drove his truck from the highway intersection towards the grade crossing, his view of the railroad tracks to the south was impaired until he reached a point approximately 220 feet from the crossing. From that point, 220 feet away, until he reached the crossing he could have seen a train approaching from the south for a distance of about one-half mile. At speeds of from 85 to 100 miles per hour, as plaintiff's witnesses testified, the train could have been visible to Strubhar for 18 to 20 seconds before the collision. One of defendant's workmen testified that he had seen Strubhar immediately before the accident and that the deceased was looking straight ahead.

■ The arguments of the parties focus on the failure of the warning signals. The trial court apparently concurred with defendant that the non-operating signals had little if any significance; that the appreciable period of time in which the train was in view, if Strubhar had looked, was proof positive that he did not look to the south. Certainly, it cannot be held that Strubhar was entitled to rely upon the signals without any other exercise of care on his part. But neither can the failure of the signals be ignored.

■ An inference is a deduction from a proven fact "* * * as is warranted by a consideration of the usual propensities or passions of men," * * *. ORS 41.330. One of the usual propensities of men is that they do not normally throw themselves in front of speeding trains and, to the contrary, will exercise ordi-

nary care in their own concerns. ORS 41.360 (4). When Strubhar's conduct was tested in this situation, plaintiff was entitled to the benefit of the presumption of ordinary care upon the part of decedent. *McBride v. N. P. R. R. Co.,* 1890, 19 Or 64, 23 P 814; *Doty v. Southern Pacific Co.,* 1949, 186 Or 308, 323, 207 P2d 131, 137.

*Lindekugel v. Spokane, P. & S. Ry. Co.,* 1935, 149 Or 634, 42 P2d 907, 99 ALR 721, has received particular attention in this case. Plaintiff emphasizes this language of that decision:

> "We refer to [Kirby v. Southern Pacific Co., 108 Or. 290 (216 P. 735)] as an illustration of the attitude of this court in support of the principle that the operation, and, hence, of course, the non-operation, of a safety signal at a railroad crossing is a circumstance which should be given substantial effect in determining whether the conduct of a traveler at such crossing should be submitted to a jury or judged exclusively by the court upon the question of his alleged contributory negligence." 149 Or 644.

Defendant relies on the fact that in addition to a non-operating signal in Lindekugel there was darkness and fog (the latter was minimal, 149 Or 643) and to this language of the opinion:

> * * * "We think that whether plaintiff placed too much reliance on the wigwag gong is a question for the jury. In this connection, it is to be remarked that plaintiff herself did not state how much reliance she gave it. If she had stated that she relied upon it to a greater extent than upon her vigilance in looking and listening for trains, it could have been argued with much plausibility that as a matter of law she was guilty of negligence in so doing." 149 Or 645.

■ The decisive language of Lindekugel is that just quoted. "We think that whether plaintiff placed too much reliance on the wigwag gong is a question for the jury." To this could be added that all of the circumstances must be weighed. In the instant case in addition to the importance the jury may attach to the failure of the signal we have the distraction caused by the gesticulating workman. (*Kirby v. Southern Pacific Co., et al,* 1923, 108 Or 290, 216 P 735.) The testimony quoted and the evidence given by other witnesses could be taken to show that this distraction, by an employee of defendant, could have claimed plaintiff's attentions to the opposite side of the crossing from the approaching train for several crucial seconds before the collision. There were also the traffic conditions, the excessive speed of the train, the testimony of the witnesses who swore they heard no bell or whistle from the train and the prior acquaintance of plaintiff with the crossing. See *Baltimore & O. R. R. v. Corbin,* (DCCA 1940) 118 F2d 9, 11, where it was said:

> * * * "The rule is peculiarly applicable, though not exclusively so (citation), where the traveler, as here, is familiar with the crossing and has come to rely on the signals to warn of approaching trains. We therefore think the jury was entitled to consider the fact of reliance on the signals together with the other evidence largely circumstantial, in determining whether the decedent was contributorily negligent."

The cause should have been submitted. Reversed.

PERRY, J., dissenting.

The opinion of the majority fails to meet the issues presented on this appeal. It is a rule of law, firmly established in Anglo-Saxon jurisprudence, that it is

the duty of the court to declare the law and the duty of the jury to find the facts. Thus, when the evidence is free from dispute and no conflicting inferences can be drawn, then there is no issue for determination by the jury and it becomes the duty of the court to apply the law to the facts. *Farley v. Portland Gas & Coke Co.*, 203 Or 635, 280 P2d 384.

The majority seem to adopt the general rule of law prevailing in this country, and adopted by this court in *Lindekugel v. Spokane, P. & S. Ry. Co.*, 149 Or 634, 42 P2d 907, 99 ALR 721, to the effect that where a signaling device has been placed at a railroad crossing to warn travelers of the approach of trains, a traveler on the highway may rely to some extent on the apparent safety implied by its silence, but travelers are not entirely relieved from the obligations placed upon them when approaching such a crossing. In simple language, a traveler approaching a railroad crossing may not rely entirely upon the nonaction of a signaling device to warn him of the peril from an approaching train. It therefore follows that a traveler may rely to some extent, but not entirely, upon the automatic signal placed at railroad crossings. The obligation of the traveler to his own safety in passing over a railroad crossing must be measured by the opportunities present for his looking and listening for the danger from trains and avoiding the accident. The factual question presented in a case such as this then, is simply, was there offered to the traveler at the railroad crossing controlled by signals, after acceptance of the implied invitation from the silence of the signal, a reasonable opportunity to hear and observe the approach of the train in time to have avoided the accident? If reasonable minds would differ in answering this question, then the matter should be

determined by the jury, otherwise not. The majority simply do not meet this issue, as will be demonstrated.

This court has on many occasions stated that the obligations of personal safety placed upon a traveler, as a reasonably prudent person, on approaching a railroad crossing, is to look and listen, and the failure to meet this obligation is contributory negligence as a matter of law. *Schwesinger et al v. Hebert et al,* 220 Or 149, 348 P2d 249; *Kirby v. Southern Pacific Co. et al,* 108 Or 290, 216 P 735; *Blackburn v. S. P. Co.,* 34 Or 215, 55 P 255.

It is true that the law does not require that "a person about to cross a railway track on a street or highway at grade must have looked at any particular place, or in any particular direction first." (*Kirby v. S. P. Co.,* supra, citing 3 Elliott on Railroads, § 1166 a), but the looking and listening must be done, as stated by Elliott, "at a sufficient distance to enable him to discover the approaching train and avoid injury by the exercise of reasonable and ordinary care." Of course, it would be absurd to say the looking and listening need not be in the direction from which the train might approach.

As their first proposition that the deceased did not rely entirely upon the inactive signal, the majority rely upon the presumption that "A person takes ordinary care of his own concerns." ORS 41.360 (4). It is elementary that this presumption is controlled by the circumstances existing when the person is called upon to exercise "ordinary care." In this case the circumstances are the dangers in crossing a railroad track. Then, as applied to this case, the presumption is that the deceased did look and listen at a place where he could stop in safety. If this fact is assumed, even to the same extent as if deceased had lived and had

so testified, then what reasonable conclusions may be drawn from this admitted fact? There are only two. Either (1) the deceased did not see or hear the train, or (2) he did see or hear the approaching train. Ordinary care at a railroad crossing requires that a person on approaching the crossing shall see an approaching train if there are no obstructions and visibility is good, and a statement that one looked but did not see, under these circumstances, is of no avail. *Schwesinger et al v. Hebert et al,* supra; *McNealy v. Portland Traction Co.,* 213 Or 659, 327 P2d 410; *Robison v. Oregon-Wash R. & N. Co.,* 90 Or 490, 176 P 594; *Cathcart v. Oregon-Washington R. & N. Co.,* 86 Or 250, 168 P 308; *Bass v. Southern Pacific Co.,* USDC Or 1961, 196 FSupp 763.

If the deceased did in fact see the train, which was visible, at a time when the accident could have been averted, then, since the only conclusion which may be reached is that he attempted to beat the train to the grade crossing, he was guilty of contributory negligence as a matter of law. Where an attempt is made to cross in front of a fast approaching train, the person so doing assumes a calculated risk of injury and is negligent as a matter of law. *Graf v. Chicago & N.W. Ry. Co.,* 94 Mich 579, 54 NW 388; 2 Thompson on Negligence, 2d Ed, § 1669, and cases cited therein.

In either event, if the presumption is indulged, the deceased was guilty of contributory negligence as a matter of law.

The majority point out that plaintiff's own evidence shows that the accident happened in the daytime and visibility was good, and that the train was visible to the deceased had he looked at a point 220 feet from the crossing for a period of 18 to 20 seconds. It should also be noted that plaintiff's own evi-

dence is to the effect that the deceased was traveling at an estimated speed of five miles per hour and that his vehicle had almost passed over the track, when the rear portion was struck by the train. While there is no evidence as to the condition of the brakes on the truck, it must be assumed deceased was not driving a defective vehicle, and that he met the requirements of the law which, at a speed of even 10 miles per hour, will stop a truck within 9.3 feet after the brakes are applied. ORS 483.444. No one could seriously question then, that under this state of facts, had the defendant looked he would have discovered the train, and even if he delayed looking until he was 25 feet from the track he could have stopped and this accident would not have occurred.

No other argument is made than that of the presumption that there is any evidence or any inference from which can be drawn the conclusion that the deceased did not rely entirely upon the signal for his safe passage over the crossing. The majority merely offer excuses for deceased's failure to look or listen, but no reason why he could not look and see in time to avoid injury. They state:

"* * * in addition to the importance the jury may attach to the failure of the signal we have the distraction caused by the gesticulating workman. (Kirby v. Southern Pacific Co., et al, 1923, 108 Or 290, 216 P 735). The testimony quoted and the evidence given by other witnesses could be taken to show that this distraction, by an employee of defendant, could have claimed plaintiff's attentions to the opposite side of the crossing from the approaching train for several crucial seconds before the collision. There were also the traffic conditions, the excessive speed of the train, the testimony of the witnesses who swore they heard no bell or whistle from the train and the prior acquaintance of plain-

tiff with the crossing. See Baltimore & O. R. R. v.
Corbin, (DCCA 1940) 118 F2d 9, 11, * * *."

I have found no case, and certainly the majority
point to none, which excuse the traveler approaching
a railroad crossing entirely from looking and listen-
ing. The looking or listening may not be effective be-
cause of circumstances present, but that is not the
case here. See, dangerous crossing cases: *Finn et al
v. Spokane, P. & S. Ry. Co.,* 189 Or 126, 214 P2d 354,
218 P2d 720; *Doty v. Southern Pacific Co.,* 186 Or
308, 207 P2d 131; *Fish v. Southern Pacific Co.,* 173
Or 294, 143 P2d 917, 145 P2d 991.

The Kirby case is not authority for the proposi-
tion that a distraction relieves the traveler from look-
ing and listening. It is only authority for the proposi-
tion that, in looking, a person may be deceived by
appearances. In that case the evidence disclosed that
in the city of McMinnville, Fifth street runs approxi-
mately east and west, and the tracks of the Southern
Pacific approximately north and south. Where the
street and tracks intersect at Fifth street there is no
warning bell. An automobile with four occupants was
traveling east on Fifth street, when it was struck by
a northbound passenger train. The driver Kirby was
killed in the collision, so did not testify. His brother,
who was riding in the rear seat, survived, and did
testify to what could be seen from the automobile.
The evidence disclosed that the driver of an automo-
bile would be unable to have a view of approaching
trains until he was 65 feet from the tracks, and then
only of 95 feet. At this point, the opinion notes, that
by reason of the rate of speed of the particular train,
the train was not then visible. So, assuming the de-
ceased did look, there was nothing to be seen. There
was, however, a warning bell located on Fourth street,

which was heard by the brother. The brother testified that on hearing the bell he looked in both directions and saw a train standing in the station, and, "I thought the train from the depot was starting to go south toward Whiteson." These facts will not support the proposition that a traveler is excused from looking and listening when there is an opportunity to do so. They simply support the proposition that, having looked and listened at a railroad crossing for the approach of a train, a person may be misled by what is to be seen.

If the majority are trying to infer that the gesticulations of the workman in some manner confused the deceased so that he thought the track was clear and he could pass over in safety, they are assuming a fact not in evidence. All of the testimony is to the effect that the workman was waving to the deceased to stop. There is no testimony otherwise. Further, if the workman was standing by the crossing, a driver, in looking at him, would not in anywise be looking in either direction for approaching trains.

The next circumstance which the majority say a jury might consider in determining whether the defendant acted as a reasonably prudent person at a railroad crossing is the traffic conditions. As they state, the only traffic condition was a car about 20 feet ahead. I am unable to see any materiality in this fact whatsoever, unless the majority are saying that the driver of a vehicle approaching a railroad crossing may rely upon the driver ahead to maintain the following driver's lookout and listening for him. This is such an absurdity as to require no citation of authority.

What the speed of the train has to do with the problem here presented I do not comprehend. Ad-

mitting it was traveling at an excessive rate of speed and thus establishing the negligence of the defendant, we are here concerned with deceased's contributory negligence, and, as to the matter of contributory negligence, all of the evidence is conclusive of the fact that had the deceased looked and acted on what was to be seen, there was ample time to have stopped and avoided the catastrophe, regardless of the speed of the train. The same must be said also of the evidence that no bell or whistle sounded from the train.

The last item which the majority state the jury can take into consideration in determining the question of deceased's negligence is prior acquaintance with the crossing. They cite only the conclusion of the court to *Baltimore & O. R. R. Co. v. Corbin,* 1940, 118 F2d 9. They do not set forth the facts, so I shall.

In that case the driver of a motor vehicle who was familiar with the crossing was struck by a train at the railroad crossing, and killed. There were no witnesses to the accident. The decedent approached the crossing from the east, and either struck or was struck by the locomotive. The accident occurred at night, and the court describes the deceased's opportunities for view of the approaching train, as follows:

"North of Bates Road and east of defendant's right of way is a bank 10 feet or more in height. Five witnesses testified at the trial that a person approaching from the east could not see any distance up the track to the north until he came within a very few feet of the crossing. From the testimony of other witnesses, and from physical exhibits, it appears that an unobstructed view of the track to the north could be had from approximately 20 feet east of the northbound track. * * *"

The court then, after adopting the general rule that a traveler approaching a railroad crossing where auto-

matic safety signals are installed may relax his usual diligence to some degree, stated:

> "We cannot say as a matter of law that the jury was wrong in finding decedent not contributorily negligent. If, as the jury must have found, the signals were not working, decedent may have relied on them in failing to curtail his speed sufficiently in approaching the crossing to be able to avoid the accident. From the evidence as the jury might have found it there was a distance of only about 30 feet during which decedent had a view of the oncoming train. * * *"

The court in that case simply held in line with all the authorities (see Annotations, 53 ALR 978; 99 ALR 729; and *Lindekugel v. Spokane, P. & S. Ry. Co.*, supra) that, since deceased was acquainted with the crossing, and knew it was controlled by automatic signals, and on seeing they were not working he need not slow his automobile down to such an extent that he could meet an emergency if they were not working but could proceed at a lawful rate of speed, the question of fact to be determined was whether or not, after acceptance of the implied invitation to the effect that no train was approaching, was there an opportunity to look and hear the train in time to have avoided the accident. Certainly reasonable minds might differ as to whether or not, traveling at a lawful rate of speed, there was an opportunity, on looking and listening, for the driver to have stopped within 30 feet.

The majority, in the present case, apparently rely in some vague way upon the doctrine of what a reasonably prudent person would do under the same or similar circumstances, without taking into consideration what the law requires of the reasonably prudent

person in the circumstance of approaching and planning to pass over a railroad crossing.

The statements of the trial court in the record show that he fully understood the question presented and correctly applied the law.

For the reasons above stated I would affirm the judgment of the trial court.

Mr. Justice DENECKE joins in this dissent.

McALLISTER, C. J., dissenting.

The majority hold that Strubhar was not entitled "to rely upon the signals without any other exercise of care on his part." If there is evidence in this case of "any other exercise of care" on Strubhar's part it is not pointed out.

It seems to me that this accident would not have occurred if Strubhar had used even slight care for his own safety. It is conceded that as Strubhar traveled the last 220 feet before reaching the crossing he had an unobstructed view of the tracks to the south for a distance of one-half mile. The accident occurred on a summer afternoon with unimpaired visibility. Under the testimony most favorable to plaintiff the train was visible for 18 to 20 seconds before the crash. Strubhar was traveling at a slow speed and could have stopped his vehicle within a few feet. If Strubhar was not entitled to rely entirely on the signals but was required to exercise some degree of care for his own safety, then I think under the circumstances of this case he was negligent as a matter of law.

I dissent.