Argued September 11, reversed and remanded November 6, 1963

# CLOUGH *v.* PRUDENTIAL INSURANCE COMPANY

## 386 P. 2d 464

*Robert F. Maguire,* Portland, argued the cause for appellant. On the briefs were Maguire, Shields, Morrison, Bailey & Kester.

*Roger N. Rook,* Milwaukie, argued the cause for respondent. On the brief were Erlandson & Rook.

Before McALLISTER, Chief Justice, and O'CONNELL, GOODWIN, DENECKE and LUSK, Justices.

O'CONNELL, J.

This is an action to recover the face value of a life insurance policy which named plaintiff as the beneficiary. Defendant appeals from a verdict and judgment for plaintiff.

The evidence conclusively established that in the application for insurance the insured made certain material misrepresentations as to his state of health. The jury was instructed to find that these misrepresentations had been made. Another issue of fact was raised, however, by plaintiff's allegation that the written application was not attached to the policy when it was issued. Plaintiff relied upon ORS 739.320 (1) (d), which provides as follows:

> "(d) A provision that all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties, and that no such statement shall be used in defense of a claim under the policy unless contained in a written application and unless a copy of such statement is endorsed upon or attached to the policy when issued."

The trial court instructed the jury that unless the application containing the misrepresentations were a part of the policy plaintiff would be entitled to recover irrespective of the insured's misrepresentations.

Defendant contends that its motion for a directed verdict should have been granted on the ground that there was no evidence to support a conclusion that a copy of the application for insurance was not attached to the policy when it was delivered to the insured.

■ Defendant's assertion that the application was attached is supported by the evidence. The evidence established that it was the regular business practice of defendant to attach the application to the policy and officers of defendant testified that when the policy with the proof of loss was received in its claims department in Los Angeles the application was attached to the policy. Since such attachment is a condition precedent to a defense based upon the insured's misrepresentation (ORS 739.320 (1) (d)) it is fair to assume that in the absence of evidence to the contrary the application was attached.

The evidence in this case fulfills the test adopted in *Wiebe v. Seely, Administrator,* 215 Or 331, 343-344, 335 P2d 379 (1958) for withholding a case from the jury upon the basis of uncontradicted evidence.[1]

The remaining question is whether there was contradictory evidence. The only evidence adduced to show that the application was not attached at the time of the issuance of the policy was the testimony of plaintiff. Her testimony was as follows:

"Q Did you read it [the policy]?
"A We looked at it, read most of it.

---

[1] See also Rickard v. Ellis, 230 Or 46, 368 P2d 396 (1962).

"Q  What parts did you read?

"A  I can't tell you exactly, but we looked at it page by page.

"*  *  *  *  *

"Q  Did you read it over again before you put it in the safety deposit box?

"A  Yes, I looked at it before we put it in.

"Q  What was the occasion of looking at it at that time?

"A  I look at all of the papers as I put them in.

"Q  Check them over?

"A  Yes.

"Q  When you and Mr. Clough looked them over, did you have a conversation about the provisions of the policy?

"*  *  *  *  *

"A  No, we really didn't.

"Q  Did either one of you read it out loud to the other?

"A  Well, no, we were both capable of reading.

"Q  I know that, but did you read it first or did he read it first?

"A  He looked at it and I was sitting beside him and he handed it to me and I looked at it.

"Q  Do you remember this endorsement that was on the policy that was there at that time?

"A  These two pages I do not remember seeing in there because they were of a different size and I couldn't remember of seeing a different size.

"Q  Did you attempt to look it over to see if there was anything in a different size there?

"A  We paged clear through it.

"Q  You are not prepared to say that it wasn't there?

"A  As I said, I can't remember seeing it."

On cross-examination by Mr. Rook, counsel for the plaintiff:

"Q In connection with these long papers, the two odd-sized papers that were put in the middle of that policy, I would like to refer you to those, and this is in Exhibit A, and ask you whether or not you saw that piece of paper, either of those pieces of paper there at the time that you had the policy, examined the policy before you put it in the safety deposit box?

"A No, I do not.

"Q Do you feel that you would have been able to see it, or would you have seen it if it had been there?

"A I feel quite sure I would have."

On re-direct examination by Mr. Maguire:

"Q Is it a fact that you say it was not there, or that you don't remember seeing them there?

"A I don't remember seeing it there."

The substance of plaintiff's testimony was that she could not remember seeing the application at the time she leafed through the policy. The statement that she could not "remember" seeing the application is ambiguous. It could mean that the presence or absence of the application in the policy made no impression upon her mind at the time she leafed through the policy and that, therefore, at the time of testifying she could not state whether the application was or was not attached. This would, in effect, constitute an admission that she lacked the necessary knowledge to testify as to that fact.[2]

Or the statement could be construed as an assertion that if the application had been attached she would

---

[2] McCormick, Evidence § 10, p. 19 (1954).

have remembered seeing it and since she did not remember seeing it the application was not attached. We shall treat her statement that she did not remember seeing the application as an assertion that she did not see the application.

The question then, is whether that assertion is, under the circumstances, sufficient to support an inference that the application was not attached to the policy when it was issued.

■■ The fact that a witness' statement is negative in form does not necessarily rob it of evidentiary value. If the question were whether an explosion occurred in Jones' office on a certain day and Jones testified that he was there on that day and did not hear it, the evidence would be highly persuasive. Negative testimony is unobjectionable if the witness was "so situated that *in the ordinary course of events he would have heard or seen* the fact had it occurred." II Wigmore, Evidence § 664, p. 778 (3d ed 1940).⑨

■ The facts in the present case must be tested against this requirement. It is a court function to decide whether the circumstances are such as to satisfy the requirement. When plaintiff examined the policy before putting it in the safe deposit box she had no reason to direct her attention to the contents of the application. There was, therefore, nothing to draw her attention to the presence or absence of the application. This being so, was there anything about the character of the copy of the application which, if attached, was likely to have been noticed by plaintiff? The copy of the application which was attached to

⑨ Napier v. Southern Pacific, 218 Or 371, 345 P2d 400 (1959); Spence, Adm'x. v. Rasmussen et al, 190 Or 662, 226 P2d 819 (1951); Lovett v. Gill, 142 Or 534, 20 P2d 1070 (1933); Lauderback v. Multnomah County, 111 Or 681, 226 P 697 (1924).

the policy when introduced into evidence was about two inches narrower and about seven inches longer than the pages of the policy itself. The copy of the application had been folded to adapt it to the length of the other pages of the policy. The printing on the attached application was smaller than that found in the policy. It was obvious that the attachment was a photograph of the original application.

Plaintiff's testimony is, in effect, that she would have remembered seeing the application if it had been attached. This amounts to nothing more than an assertion that ordinarily anyone looking through such a policy would have noticed the attachment. We do not think that a person examining a policy under the circumstances of this case would ordinarily attach any special significance to the presence of the application if it had been attached. We believe, in other words, that there must be a special reason which would direct a person's attention to the application. The fact that it was a photographic copy, narrower and longer than the policy itself, and printed in smaller type is not sufficient to draw the special attention of the examiner to the application. We have no way of proving that this conclusion is correct. It derives from our observation of the way people normally respond under such circumstances. Our basis for judgment is essentially the same as that employed in *Napier v. Southern Pacific,* 218 Or 371, 345 P2d 400 (1959) in which we held that testimony by a witness that he did not hear the ringing of a locomotive bell or the sound of a locomotive whistle did not have probative force. There, too, we reached our conclusion upon the basis of our understanding of how the average person responds to his surroundings.

Even if her testimony is treated as a statement

that she did not see the application, it is at best no more than an admission that she did not know whether the application was or was not attached. She asks that as a substitute for her lack of knowledge the court and the jury indulge in the assumption that if the application had been attached to the policy she would have seen it. Under the circumstances of this case that would be mere speculation.

The judgment of the lower court is reversed and the cause is remanded with directions to enter judgment for defendant.