Argued September 15, affirmed October 14, 1964

# HUNT *v.* DOUGLAS ET AL

## 395 P. 2d 774

*J. Robert Jordan,* Portland, argued the cause for appellant. With him on the brief was John P. Ronchetto, Portland.

*Douglas E. Kaufman,* Tillamook, argued the cause for respondents. On the brief were McMinimee & Kaufman, Tillamook.

Before McALLISTER, Chief Justice, and PERRY, O'CONNELL, DENECKE and LUSK, Justices.

DENECKE, J.

Plaintiff's daughter was killed when the car which plaintiff was driving was hit by a train at a railroad

crossing. Plaintiff brought this action for damages for his daughter's death. The defendants are members of a commission which operates the railroad; the defendant Schafer was the train engineer. The verdict was for the defendants.

I

The trial court found, as a matter of law, that the crossing was not extra-hazardous. As a result of this finding the trial court refused to give certain requested instructions relating to extra-hazardous crossings and removed specifications of negligence applicable to such crossings. These various rulings are assigned as error.

■■ "Under ordinary conditions a train on a railroad crossing is adequate notice of its presence, and there is no duty to use flagmen, flares or other signals to warn a motorist of any danger, as it may be assumed that he will exercise due care to avoid injury." *Finn v. Spokane, P. & S. Ry. Co.*, 189 Or 126, 133, 214 P2d 354, 357, 218 P2d 720 (1950). But if, under the existing conditions, the railroad can reasonably anticipate that a motorist using due care would nevertheless be likely to collide with a train at the crossing, the crossing is termed, "extrahazardous" and the railroad must provide some special warning.

The tragedy occurred at about 6:00, p.m., October twenty-seventh, at a rural right-angle crossing. The track and the road were straight. The road curved sharply 528 feet before crossing. There were no obstructions to a view of the track from the road. It was dark, blowing, and raining hard—typical Oregon coast fall weather. The plaintiff had his lights on and windows closed.

The railroad runs only three miles from an industrial area into the city of Tillamook. A switching en-

gine makes a round trip daily, but at no regularly scheduled time. Here, the engine alone was operating. It was traveling at a speed of about 20 miles per hour.

■ This case is governed by *Schukart v. Gerousbeck,* 194 Or 320, 241 P2d 882 (1952), in which we specifically held that a crossing is not made extra-hazardous because heavy rain, strong winds and a dark night made visibility poor. The crossing was not extra-hazardous.

## II

■ The plaintiff charged that the railroad was negligent in failing to sound a whistle warning of the approaching engine. The court withdrew this charge from the jury's consideration because it found no evidence to support it. This presents the problem of whether the negative testimony that the witness did not hear the whistle is sufficient to create an issue of fact on the question of whether the whistle was blown. Under certain circumstances testimony that the witness did not hear a whistle or bell can create an issue of fact whether the whistle was blown or the bell rung. *Fish v. Southern Pacific Co.,* 173 Or 294, 307, 143 P2d 917, 922, 145 P2d 991 (1944).

In *Napier v. Southern Pacific Co.,* 218 Or 371, 345 P2d 400 (1959), one witness was in her home sitting at her sewing machine; she said she did not hear any bell or whistle. She stated that she nearly always heard the crossing bell. She admitted she did not hear the train pass. This witness's son, who was in the same house, testified he heard no signal. He admitted, however, that it was possible that a signal could have been sounded without him hearing it and that he was not paying any particular attention, as living near the crossing one became used to the noise. Another wit-

ness was four or five blocks from the crossing. He said he heard the sound of the collision but no signals. The witness said signals could be heard from his location but he was not listening for any signals at the time. Another witness testified she heard the whistle and crash but not the bells; she did not say whether she was paying any attention at the time. Another witness, driving in a car near the crossing, stated she heard no signals; she also then testified she was paying no particular attention and was not listening for signals. Another testified he was at his home, 400 feet from the accident, and heard no signals; he said he was not paying any particular attention and that it was possible, but not probable, that the signals could have sounded and he would not have heard them.

In *Napier* we held that the above summarized testimony did not raise a fact question whether signals were sounded. We stated that negative testimony of witnesses who were not listening or were inattentive had no probative force.

In *Clough v. Prudential Ins. Co.*, 235 Or 625, 630, 386 P2d 464, 467 (1963), we said: "Negative testimony is unobjectionable if the witness was 'so situated that *in the ordinary course of events he would have heard or seen* the fact had it occurred.' II Wigmore, Evidence § 664, p. 778 (3d ed 1940)."

■ The engineer and conductor in this case testified that the whistle was blown. They stated it was a piercing whistle. The plaintiff testified that he did not hear it. His car windows were closed. The last 500 feet he traveled before the collision he was accelerating his car from almost a stop to about 30 miles per hour at the crossing. There were no "artificial" noises other than the car. He knew of the presence of the crossing, but was not asked if he was paying particular

attention. At the curve about 500 feet before the crossing the plaintiff was concerned that his daughter would spill some bottles she was holding and he asked her to sit facing straight ahead.

Upon this evidence this is a close question. Unlike *Napier,* this witness did not testify that he was not paying any particular attention. On the other hand, like *Napier,* he did not specifically testify that he was listening and attentive. If there had been no interference with plaintiff's hearing perhaps it would be reasonable to infer that anyone in the vicinity, whether they were particularly attentive or not, would have heard a piercing train whistle, if one had been blown. In the present case, however, the closed windows, the accelerating car, and the strong wind did interfere to an unknown extent with hearing. How attentive a person must be under these circumstances to hear a train whistle is unknown. Under these circumstances we hold that the negative testimony did not have sufficient probative value to create an issue of fact. The trial court did not err in removing this charge of negligence from the jury.

### III

■ The plaintiff contends that the trial court erred in charging the jury as follows:

"Now if you find from the evidence in this case that the plaintiff performed all of the duties imposed upon him by law within the specifications of negligence charged in the answer upon the occasion mentioned, then he would not be guilty of either negligence or contributory negligence; but if you find from the evidence in this case that the plaintiff at the time and place of the collision was negligent in one or more of the particulars alleged in the answer, and that either or any of said negli-

gent acts on the part of the plaintiff proximately caused or proximately contributed to the damage of which plaintiff complains, then the plaintiff can recover nothing from the defendants. The law is that if by the exercise of reasonable care in compliance with the duties imposed by law the plaintiff could have averted the damage and he did not exercise in his own behalf that care with respect to the allegations of negligence set out in the answer which the law demanded of him, then the law will not compensate the plaintiff for his damage brought about, proximately caused or proximately contributed to by him."

Plaintiff claims this instruction incorrectly placed upon him the burden of proving he was not contributorily negligent. We do not construe this instruction as relating to the burden of proof. The trial court in another part of its charge, instructed the jury upon the burden of proof of both parties. The meaning of the quoted instruction is clarified when read in light of the trial court's instruction regarding the defendants' negligence. The words and the order are generally the same, i.e., if you find that the defendants did have a light burning, then they would not be negligent; if you find they did not have a light burning, they would be negligent. The instruction was not erroneous.

Affirmed.